## COUNTY COURT.

AURELIA HARPER, respondent, agt. DANIEL M. LEAL and HENRY REYNOLDS, jr., appellant.

If a defendant in justice's court, join issue on the merits after his demurrer is overruled, he *waives* the demurrer.

A justice's return is to be construed like a *case* in the supreme court, and the judgment will not be reversed on account of the admission of a little improper testimony, where the other evidence is abundantly sufficient to sustain it, and it is manifest that substantial justice has been done.

The admissibility of the opinions of witnesses, in regard to the value of personal property, discussed.

A clause in a promissory note, by which the maker, "for the payment of the same, agrees to, and with the payees, to waive all exemptions to property," *per se* creates no estoppel against the maker, in a suit by the latter, for *taking property exempt* by statute upon an execution issued on a judgment recovered on such note.

On the contrary, such clause is absolutely void, being in contravention to the spirit of our exemption act, and to public policy.

*Delaware County, Dec. Term,* 1854.

THIS was an appeal from justice's court. The plaintiff was

a householder, providing for herself and two infant children. The holder of the note, recited in the opinion of the court, re- covered a judgment upon it, on which an execution wa$ issued under which the defendant Leal, a constable, assisted by the defendant Reynolds, levied upon and carried away the plain- tiff's exempt property ; for which taking this action was brought. The defendants justified under the judgment and execution in the former action, and insisted that the note on which that judgment had been recovered, which they also gave in evidence, *estopped* plaintiff from claiming that the property was exempt.

Testimony having been given of the condition of a feather bed and pillows, and of the time they had been in use, and of their value, &c. ; a subsequent witness, who was acquainted with the value of such property, was asked " If she had heard the description of the bed and pillows," given by a former witness; and, on responding in the affirmative, she was further inquired of, " What do you call such a bed and pillows worth ?" which was objected to, on the ground that she had not seen the property, and could not estimate it from the description of another witness. The justice per- mitted her to reply, and she testified, " If there were 25 pounds of feathers, I think it would have been worth $12." A for- mer witness, who had seen them, had estimated them at $20. The other points in the case sufficiently appear in the opinion of the county judge. Plaintiff recovered for the property.

S. A. GIVENS, *attorney for appellants.*

L. L. BUNDY, *attorney for respondent.*

GLEASON, J. This cause has been argued with great ingenuity and ability by the counsel of the respective parties. After a careful examination of the justice's returns, I am of opinion that the controlling question in the case is, whether plaintiff was *estopped*, by the terms of the note introduced in evidence, from insisting that the property in controversy was *exempt ?*

Upon the demurrer, and objections to the complaint, I have not much difficulty. The original demurrer seems to have

been informally passed over, without any decision of the justice upon it, and the defendants proceeded to join issue upon the merits.    This latter act was in itself a waiver of the demurrer.  (*Peck* agt. *Corning*, 1 *Denio's R.* 222 ; *Irvin* agt. *Forbes*, 11 *Barb. R.* 587.)   The subsequent objections to testimony, on the ground that the complaint was too vague, was tantamount to insisting that the plaintiff was out of court, and that there was no issue to try.   The justice probably supposed that the defendants were better qualified, by their actual possession of the property, to furnish plaintiff with a bill of particulars, than the latter to give one to them.   The declaration was good in substance, and, the demurrer being out of the case, the evidence was properly received.   At all events, I am persuaded that it would not be giving "judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits," to disturb the judgment on this point.

Nor do I deem the evidence in regard to the value of some of the property, objected to by defendants' counsel, of sufficient importance, when weighed with the other testimony in the case, to reverse the judgment; even though the question which Avis Barlow was permitted to answer, over defendants' objection, were held improper.   Her response was very guarded, and was little more than her estimate of the value of feathers partly worn.   But, it is not clear to my mind, that the testimony was inadmissible.   It was not akin to that proposed in the case in 14th *Barb. R.* 206, cited by defendants counsel : there the witness was requested to estimate the value of a saw mill, which he had never seen, and about which he plainly showed himself incompetent to testify.   Here there was no general estimate, in an exceedingly complicated case like that in 14th *Barbour*, sought to be elicited; nor is this similar to the one in 5 *Hill* 603, where the witness was inquired of, what were the amount of damages sustained by the sinking of a canal boat, which he had heard described by other witnesses ; or to the estimate of damage to a stock of cattle, in consequence of being fed on damaged hay, (2 *Comstock* 516 ;) or of

the damages sustained in consequence of a mill lying still, (7 *Barb.* 74.) In the latter case, though the question was objectionable, yet as the witness, in his reply, only stated facts, it was held immaterial. Nor is this a case parallel to *Norman* agt. *Wells*, (17 *Wend.* 136,) where the question was, as to the probable amount of damages sustained by a factory owner, upon a breach of a covenant running with the land. On the contrary, this was an inquiry of a person familiar with such property, as to the value of articles which had been in use.

Witnesses are allowed to testify to the value of personal property, with the price of which they are familiar. (*See* 1 *Phil. Ev.* 290; 1 *Cow. & Hill's Notes,* 760; 23 *Wend.* 354.) In the latter case, the plaintiff was permitted to prove the value of a "well broke setter dog," and "the worth of breaking one," in order to show the damage sustained by the killing of his dog. In 4 *Barb. R.* 625, the opinion of a mason, as to "how long it would take a wall to dry," was held competent. In 5 *Denio,* 84, it was held legal to ask a witness who had seen a cow, "what she would be worth if so and so, and if she gave so much milk?" as she had been warranted. Suppose the value of a firkin of butter had been in controversy, and it had been described by witnesses, and then a butter dealer had been inquired of, what such a firkin of butter was worth at the time and place where the injury was alleged to have occurred? What great impropriety can there be in permitting a woman acquainted with feather beds, and knowing how they are affected by use, and otherwise competent to testify in regard to their value, to state what a bed containing 25 pounds of feathers, and used a certain time, would ordinarily be worth? It is by no means evident that each juror would be equally well qualified with the witness to judge of its value. But if Mrs. Barlow's testimony was technically objectionable, I regard it as too unimportant to disturb the judgment. She valued the bed and pillows, upon condition that they contained 25 pounds of feathers, at only $12; while another witness had estimated them at $20.

A justice's return is to be construed like a *case* in the supreme

court; and every minute error, not materially affecting the merits, will not overturn the judgment, where it is apparent, from the whole return, that substantial justice has been done. (5 *Barb. R.* 283; 12 *Id.* 382 *and* 13 *Id.* 116.)

Entertaining these views upon the other points in the case, the main question again recurs, viz. : whether the clause "agreeing to waive all exemption to property," in the following note, upon which the judgment was recovered, whereon the execution was issued and the property in controversy seized, was a bar by way of an *estoppel* to this action? viz. :

"$15.89. For value received, I promise to pay A. & J. McDonald, or bearer, fifteen dollars and eighty-nine cents, and the interest, on demand; *and for the payment of the same, I agree to and with them to waive all exemptions to property.*

AURELIA HARPER."

*Dated, April 6th,* 1853.

I am of the opinion that the case of *Crawford* agt. *Lockwood* (9 *How. Pr. Rep.* 547,) virtually decides the question in the negative. It is strenuously insisted that that case is very distinguishable from the one under consideration, and should not control it; that, in the former, the words "hereby waiving" could have had no effect at the time the note was executed, and that they were not tantamount to an agreement to waive thereafter; whereas, there is an express contract *to waive* in the note before this court. Giving a reasonable intendment to the words "hereby waiving," and thus construing the note so as to carry out the evident intention of the parties to it, I apprehend the legal effect of each is not materially different. But, if the note before this court alone contains an agreement to waive, the reasons adduced by the learned judge, in *Crawford* agt. *Lockwood,* (and which to my mind are entirely satisfactory,) establish that no estoppel exists under it.

But, I may add, that could an estoppel be predicated upon such a contract, much more testimony would be requisite to establish it, than was given in this action. Estoppels *in pais* are based upon admissions and conduct *designed* to influence

Harper agt. Leal and another.

the *conduct* of another, and *which have actually had that effect.* (8 *Wend. R.* 480 ; 10 *Barb. R.* 108, *and Id.* 436.) Then, for the *prevention of fraud*, the law holds the admission conclusive. (3 *Hill*, 219 ; 1 *Selden*, 401 ; 5 *Denio*, 157.)

Here we have, in the first place, an ordinary negotiable promissory note, due when executed, and no forbearance or delay stipulated for. There is no proof that the payees would not have taken the note, unless the clause agreeing " to waive" were inserted, or that they lost any rights, or sold or delivered any goods upon the strength of that clause, or that plaintiff *designed* it should have that effect upon them. If it had no such influence at the giving of the note, then it rested wholly in contract, to take effect in the *future*, upon the contingency of a judgment upon it, and the levy of the execution upon exempt property ; and the payees were at full liberty to levy upon all property not exempt, or the sheriff could accept payment from the creditors of the plaintiff, if any there were, on the execution, the same as if no such clause were contained in the note. There was nothing reciprocal between them, in respect to the exempt property upon which to found an estoppel ; and had the plaintiff, when the *officer* presented himself, offered to turn out the exempt property on the execution, there was no obligation on the part of the latter, or of the plaintiffs in the execution, to levy upon that, instead of other property not exempt.

This case is quite distinguishable from those of the *Utica Insurance Company* agt. *Bloodgood*, (4 *Wend.* 652,) and *Gaylord* agt. *Van Loan*, (15 *Wend.* 308.) Those arose under the statute of limitations, which was formerly regarded with disfavor, and a defence under it was deemed hard and unconscionable ; and to this day the courts lean against the allowance of amendments setting up this statutory bar. The statute, if pleaded, created a legal presumption of payment ; but that presumption was formerly rebutted by slight proof that the statute bar had not attached. In each of the cases above cited, a fair interpretation of the language of the defendants was, in substance, that the statute had not affected the demand, and that, as far as that was concerned, the lapse of time had left it unimpaired ; or, as was contended

by the distinguished counsel in *Gaylord* agt. *Van Loan*, each was, in effect, a conditional promise by the defendant, "that if plaintiff would prove the debt, he would pay it." It seems to me that, in any point of view, enough was said by the defendants in those cases to repel all presumption that the statute had then had any effect upon the debts, and that thus they were open for judicial examination for six years from the agreement not to plead the statute.

But if the agreement could operate only by way of estoppel, then there must have been a valid contract not to prosecute until the six years had expired, under which plaintiff had actually waited till the six years had terminated; or, at least, the defendant must have designed to influence, and must actually have influenced plaintiff's conduct, whereby, without the estoppel were allowed, the debt would be lost. How long would the court hold the defendants were estopped in these cases? Probably six years; or, in other words, that the agreement continued the demand in life six years longer. But if the court could only give effect to the agreement in 4 and 15 *Wendell*, by way of estoppel, the latter would be based upon the fact, that the unconscionable conduct, or bad faith on the part of the defendants, would otherwise defraud the plaintiffs out of the whole of their demands; while, in this present case, a note is interposed as an estoppel, upon which the holders were, at all times, at perfect liberty to prosecute and collect out of any property not exempt.

Not only am I of the opinion that the agreement in this note, "to waive all exemptions to property," creates no estoppel, but I go further, and hold that it must also be regarded in the eye of the law as a hard, oppressive, and unconscionable contract, and that it is totally void, as in contravention to the spirit of our statutes, and of public policy.

The object of our statutes of exemption is, to protect those little communities called "families" in the possession and enjoyment of those articles of prime necessity, without which they cannot exist; and the state has a deep interest in their preservation. If the clause in this note is valid as an estoppel

*in pais,* then the payees had legal authority to wrest from this widow and her two infants, every article of bedding and of clothing not actually upon their persons, if indeed that would have continued exempt; every particle of fuel, and every ounce of food, and every household untensil, though it were but a gourdshell; and thus the family might be broken up, and compelled to flee from their home to escape perishing from cold or starvation. Nor need the creditor leave them a more ample supply of mental aliment; and in this case it appears the family bible was levied upon and carried away. A contract fraught with such consequences to the family of the debtor, I am convinced, is totally at variance with public policy, and therefore void. It in no wise aids it to observe that the creditor may prove far less rigorous than the contract would permit. The law deals with the contract, and if that confers upon the creditor the power to commit acts at which humanity would rebel, and which no civilized community would peacefully tolerate, I apprehend it will not stop to inquire whether the tendermercies of the exactor may not be less cruel than the contract itself.

But it is said that such a contract is for the benefit of the debtor, inasmuch as without it credit would not be extended to him. Were such a result to follow, it were better that Bassanio should go without a loan, than that Shylock should have a pound of Antonio's flesh, "nominated in the bond," as its penalty.

Were contracts, like the clause under discussion, to obtain the sanction of our judicial tribunals, the exemption acts might be regarded as virtually abolished : for were a few men in each community to deal in that manner, all other traders would soon be compelled to adopt it as a matter of self-protection. Were the contract an estoppel *in pais,* it would equally be so when the merchant publicly proclaimed to all his customers that he gave them credit upon the condition only that they agreed that no property should be exempt from execution.

There can be no doubt that a householder may lawfully waive his exemption to any particular article when the officer

presents himself to make a levy.   A more restricted dominion over his own property would prove embarrassing, and perhaps might compel him to retain that which he did not require, or which he would gladly exchange for something more necessary. But he exercises his own judgment and option at the time he *parts with its possession*, and is not estopped by a contract long before made, under the suggestion of silver-tongued hope, "that he should never have occasion to solicit the exemption." It is also competent for the debtor to give a specific lien upon any article.   This necessarily results from his absolute ownership over it, without which he would have no power to sell it; but a contract which, by its terms, seizes upon everything which he may thereafter possess, which the law has exempted, is a very different affair, and may well be void where a more limited one might be valid.   Thus a contract, founded upon a valuable consideration, not to exercise a particular trade or profession in a certain locality, is legal, and may be enforced; but, if it embrace the whole state within its limits, it is void, as against public policy.   A contract to pay compound interest in the future, or interest upon interest yet to come, though not usurious, is void, as contrary to public policy; its tendency being to promote accumulations, and to delay and discourage settlements; but a contract to pay interest which has been thus compounded after it became due, is valid. (*See* 1 *Wend.* 521; 1 *John. Ch. R.* 14; 9 *Paige*, 334; 2 *Barb. Sup. C. R.* 644.)

A contract to submit any controversy that may arise out of a transaction to arbitrators, cannot be pleaded as an estoppel to a suit; nor a contract not to prosecute within a certain time, though a covenant *never* to sue has sometimes been construed to operate as a release.   A contract never to plead the statute of limitations, if made when the money was loaned, or debt incurred, I am persuaded would create no estoppel, but would be void.

It is true, that an estoppel is sometimes allowed in order to avoid circuity of action, or a *multiplicity of suits*, which the *law* is said to *abhor*, though it may be otherwise with *lawyers*,

Harper agt. Leal and another.

who perhaps are too democratic to harbor hatred towards such a *multitude*.

This estoppel properly occurs when all that is recovered in the one action would be liable to be recovered back by the adverse party in a new suit.   No such state of facts could arise out of the transaction before the court, even though the agreement " to waive all exemptions " were valid : for the debtor, by the breach of her agreement, would neither subject herself and family to a judgment under which they might be starved or frozen, nor compelled to infringe the acts against vagrancy ; nor could she be imprisoned : and, on the other hand, the creditor would not be bound to levy on any exempt property, but might collect his demand, though the exemption were insisted on and allowed.

Abhorrent as it would be to a freeman to grant a lien upon his person, and illegal as it would be universally regarded in any free state, it would be no more at war with public policy to permit the creditor to extort a contract from the debtor, " that he will waive all exemption from imprisonment, and that the creditor may sell him a limited time into bondage for the payment of the debt," than are the prerogatives claimed under this note.

Judgment affirmed.