*MICHAEL H. MURPHY V. EDWARD QUIGLEY.

1. IMPLIED CONTRACT FOR SUPPORT OF CHILDREN.

Where the father, upon separation from the mother, placed his children with their grandparents, under contract to pay a stipulated price for their care and support. and subsequently took them away and placed them in a convent, and the mother afterwards, without the father's consent, returned the children to their grandparents, where they remained for four years, the father visiting them frequently and knowing that no compensation was being paid for their care and support, the father is liable, upon implied contract (if returning the children to the grandparents did not revive the original contract), for a reasonable sum for such care and support.

2. PLEADING TWO CAUSES OF ACTION IN SUCH CASE.

A petition in an action against a parent for board and support of his children, which sets up two causes of action, the first upon an express agreement as to the price and the other upon a *quantum meruit*, is not objectionable and plaintiff cannot be compelled to elect upon which ground he will proceed, especially where both grounds may be true and he is not certain which may be established by the evidence. It is proper in such case to submit the question to the jury upon the pleadings and evidence for their determination.

3. VERDICT ON IMPLIED CONTRACT SUSTAINED.

In the case above stated, the reviewing court declined to disturb a verdict, for board and care of the children, of six dollars a week and interest, because in a previous hearing another jury allowed five dollars a week for the same time, the latter being the amount specified in the express agreement above referred to.

HEARD ON ERROR.

*Hiram VanCampen, Jr.,* for plaintiff in error.
*Hurd, Brumback & Thatcher,* for defendant in error.

HAYNES, J.

A petition in error is filed in this case to reverse the judgment of the court of common pleas, in which a verdict had been rendered for the plaintiff below, the defendant in error here, for the sum of $1,787.57, for the care of the children of the defendant.

The case stands upon the facts and the application of the law to those facts. The case was once tried to a jury, and taken from this court to the Supreme Court, this court having reversed the judgment of the court below, and having set aside the verdict and remanded the case for a new trial. The Supreme Court affirmed the action of this court, and the case was retried in the court below, with the result that another verdict has been rendered in favor of the plaintiff Quigley.

There was no report of the case by the Supreme Court,—simply reversed without report. There was not a very extended discussion of the

*For a decision of the common pleas in this case, see 5 Dec., 680.

questions in the petition in error in this court, at the time the case was reversed. We shall not go into any extended discussion of the questions this time. We do not think it is necessary. We doubt, indeed, that we could add anything to the law of the case which has been cited by counsel for both parties. They have been diligent and energetic in the citation of authorities, and perhaps have given them as fully as they can be obtained, certainly more fully than we could get them. The real thing for the court to do is to apply the law to the facts of the case.

The first point that has been urged before us is this: That the court below erred in its refusal to compel the plaintiff below to elect upon which cause of action he would proceed to the trial of the case. The first cause of action, it may be remarked, was upon an alleged agreement, the next was upon a *quantum meruit*. It was sought to bring the case under Secs. 3110 and 3116, Rev. Stat.

The code provides (Sec. 5060) for a statement of a cause of action in ordinary and concise language, and in the next section, that each cause shall be separately stated and numbered, if the petition contains more than one cause of action. I read from the notes and the cases therein cited: The irregularity is reached by motion and not by demurrer, otherwise it is waived; and the refusal of a motion to compel plaintiff to separately state his causes of action is not ground of error unless the opposite party is prejudiced. Bear v. Knowles, 36 Ohio St., 43.

It is a general rule, however, that facts constituting a single cause of action cannot be subdivided into two or more causes of action. Ferguson v. Gilbert, 16 Ohio St., 88; Sturges v. Burton, 8 Ohio St., 215; 24 Fed. Rep., 580.

Where there is one cause of action, and it is set forth in several counts, plaintiff may be compelled by motion to elect on which one he will rely. 10 How. Pr., 281; Sturges v. Burton, 8 Ohio St., 215; Raab's Estate, 16 Ohio St., 274, 281.

But where he is uncertain as to the grounds of his recovery, or there is a fair and reasonable doubt as to his ability safely to plead them in one form, he may set forth his causes of action in distinct statements, and he will not be compelled to elect as between them. 65 How. Pr., 1; 61 Cal., 209; 12 Abb. n. c, 309; 31 Hun., 432.

As where plaintiff seeks to recover upon two grounds, both of which may be true, and he does not know which one, he may state them as separate causes of action, and in the alternative in one petition. Strong v. Strauss, 40 Ohio St., 87; First National Bank v. Railway Co., 9 Dec. (Re.), 702; see Cin. N. O. & T. P. Ry. v. Bank, 1 Circ. Dec., 109.

And since our statute does not require that the facts shall be stated without unnecessary repetition, this mode of pleading cannot be regarded objectionable. Citizens Nat'l Bk. v. Railway Co., 9 Dec. (Re.), 147.

There may be actually two grounds, or, being only one, certain supposed grounds may be so connected that the plaintiff will not be able to tell in advance which will be established upon the trial. The code will have failed in its chief object if he is forbidden to develop every ground upon which he bases his right to recover. Bliss Code Pl., Sec. 120; Pomeroy Rem., Sec. 576; 27 Wis., 327; 1 Abb. Pr., 442.

We have examined substantially all these cases. and we think the law is well settled and is as stated in this note. We therefore think the court did not err in refusing to require the plaintiff to elect as to which cause of action he should proceed upon. It seems to us it is clearly within

the principle laid down, where the plaintiff is not certain as to which ground he can recover upon. The testimony shows that it was a very proper case for the party to set out his cause of action in two or three different forms. It is possible that by reciting the testimony he might have stated it all in one cause of action; but had he done so, he would have still been liable on motion to have his petition trimmed down for redundancy. We think it was proper for him to state it as he did state it, and then offer his testimony, and have the question submitted to the jury upon the pleadings and the evidence as it was finally developed on the trial. We have had several of these cases precisely like the case at bar, involving allegations on express contract and general account.

The more difficult question comes up as to the liability of this plaintiff in error to the defendant in error for the care of these children. A very brief recital of the facts will show the situation of the parties.

This plaintiff was a married man. His wife and he could not agree. What the difficulty was between them does not appear, and it is immaterial here. Suffice it to say, they agreed to disagree, and to live separately; but it was agreed that these two children, one perhaps five and the other two and one-half years of age, should be left with the plaintiff below, Quigley, who was the foster father of Mrs. Murphy, or at least the person by whom she had been brought up. They were to be left with Quigley and his wife. It was not stated how long they should be left. It was agreed that they should not be taken away without the consent of the father, and it was agreed that he should pay $5.00 a week for their board. It is said that nothing was said about clothing. A few weeks after that it is said that notice was served by Mr. Murphy upon Mr. Quigley, that he would not be responsible for their board any longer. It is denied on the part of Mr. Quigley, I believe, that he received that letter. At the expiration of that time, Mr. Murphy, without the consent of either of these parties, took these children and put them in the convent, where he made arrangements for their board and care for an indefinite period, and for which he was to pay a certain fixed sum of money. They remained there a short time, and then the mother went to the convent and took the children, without the consent of the sisters or those in charge, and perhaps without their knowledge, and took them back to her foster father's, the plaintiff below, and left them there. There they remained for a period of some four years, the plaintiff and his wife taking care of the children, and giving them all the care which grandparents could give, boarding and clothing them, at which time the parents had come to some agreement in regard to their differences, and concluded to live together again, and did so, and the children were taken by their father and mother to their own residence. Subsequently, although it is not material here, the mother left and went back to where she had been before, in Michigan, and worked for her support on a newspaper, and the children have remained from that time to this in the care of the father, and are now with him at his residence.

Although there is but a single question here, that this case finally turns upon, there has been an extensive discussion of the question and of the law governing this class of cases; but in the application of the law to the particular facts of this case, it seems to us that the problem is simple, or at least not very difficult.

It is claimed that when the children went back, they did not go back under the contract, and there has been some discussion of that.

Murphy v. Quigley.

There might be, perhaps, some difference of opinion about that; but I am myself inclined to think that when they went back the contract ought to appply, or at least it ought to be used to give some light as to the amount that should be recovered by Mr. Quigley. But the children did go back. They went back with the full knowledge of the father that they were there, and with his knowledge they remained there, and it was with his knowledge that Mr. and Mrs. Quigley were caring for them, and that Mrs. Murphy was not paying for their board and clothing. He saw the children frequently. He took them out riding from time to time, and returned them to this place. He never notified Mr. Quigley that he would make any payment, neither was any payment demanded by Quigley during the four years they were there. The matter ran along, and stood in that shape. It was known, of course, at the time the children were originally placed there that Mr. Quigley expected payment, and Mr. Murphy expected to pay.

With these leading facts in the case, it was submitted to the jury by the court in a charge which we think was fair and full, and which properly submitted the issues to the jury. The real question, in our opinion, was whether this board and clothing had been furnished for these children, and furnished under such circumstances that there was fairly an implied understanding and agreement that the father should pay for the care and custody of the children, and whether the law would not imply, under all the circumstances, that he should pay for the care of the children.

Questions have been discussed which are collateral to this, and which we think have no real bearing on the present issue in the case. It is a case where the jury might very properly infer that the understanding was, when the children originally went there, that the Quigleys were to be paid. The fair understanding was, when they were allowed to remain there afterwards without being taken away, that the Quigleys should be paid for their care and maintenance. It was a fair and just debt, under the old idea of *quantum meruit,* which is said to be as broad as a bill in equity. It was equitable upon the facts of the case that the parent should pay for the support of these children. The case was decided against the defendant below, and we see no reason why the court should disturb the verdict. The verdict, it is said, is large. It is $1,700. I do not know how the jury got at it. The claim below was for 225 weeks at $5.00 a week, which would make it something over $1,100. That was the amount of the verdict in 1896. The jury seems to have allowed about $6 a week, which with interest from '96 down to the present time would make up substantially the amount of the verdict. So the only difference seems to be that in one case the jury allowed a little larger amount than in the other per week, and the interest makes up quite a large amount of difference between the two verdicts. We do not think we ought to disturb the verdict on this account.

The judgment of the court of comm ￢ pleas will be affirmed, but without penalty.