**J. N. SHELTON** *et al.*, Plaintiffs in Error, *v.* RODNEY WYMAN *et al.*, Defendants in Error.

### February 14, 1876.

A letter or account of sales, sent by a commission merchant to his customer, showing a balance of money on hand subject to the customer's order, is a "writing for the payment of money," within the meaning of the statute of limitations, and action thereon is not barred within ten years.

ERROR to St. Louis Circuit Court.

*General term reversed; special term affirmed.*

*Bereman & Smith*, for plaintiffs in error, cited: Wag. Stat. 917, 918, secs. 9, 10; Reyburn *v.* Casey, 29 Mo. 129; Moorman *v.* Sharp, 35 Mo. 283.

*Irwin Z. Smith*, for defendants in error, cited: Carr's Admr. *v.* Hurlbut's Admr., 41 Mo. 264; Chambers *v.* Ruby, 47 Mo. 99; Wag. Stat. 917, 918, secs. 9, 10.

LEWIS, J., delivered the opinion of the court.

The petition states that three several shipments of wheat were made by plaintiffs to defendants, to be sold on commission. Each shipment was made the subject of a separate count, in which, after reciting the sale and receipts of the proceeds by defendants, plaintiffs further declared that the defendants "then and there agreed to pay the same to plaintiffs; that said facts and said promise are in writing, signed by the said defendants, and hereto annexed, marked exhibit, etc." The exhibit referred to in the first count was a letter from defendants to plaintiffs, as follows:

"*St. Louis, September 14, 1867.*

"*Messrs. J. N. Shelton & Co., White Cloud, Iowa.*

"GENTLEMEN: We have received, per steamboat 'Ben Johnson,' 142 sacks wheat, which we sold to-day at $1.75 per bushel; account sales will follow in due course. The market was a little dull and heavy to-day, but we think prices will be sustained; the receipts continue light, and our millers have no supply bought ahead. We will send you more sacks by the 'Isabella,' which leaves on Tuesday next; will also send some to Stone and Cole, at Millville Landing. Referring to the inclosed R. C., we remain,

"Yours, truly,

"RODNEY WYMAN & Co."

The two other exhibits were "accounts sales" in the usual mercantile form; the first closing with the entry: "Net proceeds at Cr. J. N. S. & Co., $315.99;" and the second with a like entry, stating the sum at $325.28. Each was signed by defendants.

The answer set up the statute of limitations, averring that the suit was not commenced within five years after the right of action accrued. To this plaintiff replied that the suit was founded upon instruments of writing for the payment of money, and no bar could arise, therefore, until after the lapse of ten years. Upon trial before the court, sitting as a jury, the defendants asked for a declaration of

law to the effect that the action was barred by the statute of limitations. This was refused, and judgment was rendered for the plaintiffs. On appeal to the general term this judgment was reversed, and the plaintiffs now bring their case here by writ of error.

The statute prescribes a limitation of ten years for " an action upon any writing, whether sealed or unsealed, for the payment of money or property." Wag. Stat. 917, sec. 9. The present action was instituted more than five, but less than ten, years after the right accrued. So that, if the exhibits filed are within the descriptive statutory words above quoted, the plaintiffs ought to prevail.

If a rule of interpretation were now first to be established for the question thus presented, I should strongly incline to a distinction between such writings as are delivered for the express purpose of declaring an obligation to pay money, and of furnishing to the obligee a tangible memorial of such liability, on the one hand, and, on the other, such mere missives or communications as are designed only to keep the recipient posted concerning the state of accounts between the parties, and the credits to which he will be entitled in a future settlement. Within the first class would be placed promissory notes, bills of exchange, bonds, due-bills, etc. A petition upon one of these would need to state nothing more than the execution and delivery of the instrument. Within the second class would fall the exhibits sued upon in the present case. As to these it might be sufficient in some instances to declare upon the writing alone. But in this case, at least, the pleader deemed it important to set out in detail the facts of shipment, sale, and receipt of proceeds, as creating grounds of liability in the defendants which would sustain an action without the aid of the papers filed. The letter and accounts would thus seem to serve rather as testimony in support of the claim than as the foundation of the action itself. Such a distinction applied to the present

case would sustain the views of the general term, and declare this action barred by the limitation of five years.

But we must yield to the weight of authority. In *Reyburn* v. *Casey*, 29 Mo. 129, Judge Ewing said: "The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay money, and is not restricted to such as have the requisites of promissory notes, or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed." The case of *Harrow* v. *Dugan*, 6 Dana, 341, is approvingly referred to in the same opinion. There the defendant acknowledged that he had "borrowed" a sum of money from the plaintiff. The instrument was held to be a note for the direct payment of money. It seems impossible to distinguish between a writing which acknowledges that the defendant has borrowed money from the plaintiff and one which admits that he has sold the plaintiff's property and holds the proceeds. The agreement to pay the sum mentioned is inferable as much in the one case as in the other. In *Moorman* v. *Sharp*, 35 Mo. 283, the opinion in *Reyburn* v. *Casey* is reaffirmed. These decisions are sufficiently comprehensive, in our view, to control the present case, and leave us no alternative but to reverse the judgment of the general term and affirm that of the special term. The other judges concur.