NORTH et al. v. WALKER'S ADMINISTRATOR, Appellant.

1. **Power of Administrator to obtain extension of Notes.** An administrator has the legal power to contract for the extension of the time of payment of a note executed by his testator, so long as it is not barred under the administration law.

2. **Laches of Creditors, WHAT IS NOT.** Where such contract is made, the creditor is not guilty of laches in not exhibiting and making application for the allowance of his claim against the estate within the term to which the payment has been extended, and the creditor cannot, therefor, invoke against him the statutory bar created by sections 2 and 6, article 4 of Wagner's Statutes.

3.  ———; SECTIONS 2 AND 6, ARTICLE 4, WAG. STAT., CONSTRUED.  Where such a contract was made by the executor in good faith, and with the implied sanction of the probate court, and in the interest of the estate, and the creditor, in consequence thereof, was prevented from proving up his claim; and it appeared that, within four months after the testator's death, the creditor and executor appeared in the probate court and the executor waived service of notice, but the demand was not allowed for the reason that it was not then due, and that, within two years after publication of notice, the executor, at the instance of the creditor, filed the deed of trust describing the said note and the interest notes, which latter were paid by the executor, and filed with the papers of the estate as vouchers, with the approval of the court, and that the creditor brought suit upon the note in the circuit court within two months after the expiration of the extended time; *Held*, that there was a substantial compliance with sections 2 and 6, article 4, Wag. Stat., in regard to the exhibition and application for allowance of the claim against the estate.

4.  **Interest.**  Where a note called for ten per cent. interest after maturity, and the time of payment was extended by agreement for a certain time at the rate of nine per cent.; *Held*, that after the expiration of the extended time the note would bear interest at the rate of ten per cent.

*Appeal from St. Louis Court of Appeals.*

The decision of that court is reported in 2 Mo. App. 174.

*John M. & C. H. Krum* for appellant.

1.  The statute of limitations pleaded by appellant bars the right of respondents to a judgment in this case. Letters testamentary were granted December 10th, 1868. Publication of notice to creditors of the grant of these letters was made December 17th, 1868.  The note sued on, by its terms, became due March, 1870.  This suit was begun April, 1872, more than two years after the note became due.  Prior to the institution of this suit, the note had never been exhibited as a claim or allowed against Walker's estate.  Wag. Stat., p. 86, Sec. 19; Wag. Stat., p. 102, §§ 2, 4, 5, 6 and 8; *Wiggins v. Lovering's Admr.*, 9 Mo. 262; *Montelius v. Sarpy*, 11 Mo. 237; *Tevis v. Tevis*, 23 Mo. 256; *Richardson's Admr. v. Harrison, Admr'x*, 36 Mo. 96.

2. An administrator cannot, in any case, waive the statute of limitations, and suffer a claim to be allowed which is barred by the statute.

3. An administrator cannot, himself, admit or allow a claim against the estate he represents. All claims against an estate must be exhibited and proved by the methods, and in one of the courts prescribed by statute. No court can admit or allow a claim against an estate, except on proper proof.

4. There are but two methods provided by law for the allowance of claims against the estates of deceased persons. 1st. By serving on the administrator a notice in writing, stating the nature and amount, and a copy of the instrument or account upon which the claim is founded; 2nd. Bringing suit on the demand in some court of record. Wag. Stat., Art. 4, §§ 4, 5 and 8, p. 102, and § 15, p. 104. No demand can be allowed unless the claimant first makes oath that he has allowed the estate for all payments and offsets to which it is entitled. Ib. § 12. The clerk of the court shall keep an abstract of all demands established, showing their amount, date and class. Ib. § 26. No claimant can avail himself of the benefit of the notice given under the 5th section, unless he present his demand to the court in the manner provided by law for allowance, within three years after the granting of letters. Ib. § 26.

5. It is the policy of the laws of Missouri, pertaining to probate administration of estates, that they shall be speedily settled and distributed. Even provision is made for the allowance of claims not yet due, (by making a rebate) so that they may be classed in the 5th class.

6. As the note was never proved and allowed before this suit was brought, the vital question is, was the debt exhibited in such way, form and effect as to prevent the statute of limitations from running against it. It is not sufficient for the claimant to inform the administrator that he has a demand against the estate, and stop there, and and allow more than two years to elapse before moving

again.   True, it appears in this case that the administrator admitted that he knew the claim was right and valid, still as the administrator himself could neither admit or allow the claim against his intestate's estate, and as the claim was not, in fact, proved and allowed, the whole proceeding amounted to nothing, and the claim remained neither approved nor allowed.   Nor was it sufficient to produce the note before the judge of probate, notice and all objection having been waived by the administrator.   The claim of plaintiff remained unproved and not allowed, more than two years before this suit was begun, and more than three years elapsed after the granting of letters before this suit.   Thus, it is shown, that notwithstanding the administrator waived notice (as he was authorized by statute to do, § 17), the claimants in the prosecution of this suit can have no benefit of their notice to the administrator because more than three years elapsed after the granting of letters before this suit was begun.

7.   The Court of Appeals assumed that the act of the executor extending the time of payment of the note was beneficial to the estate, but there is no proof whatever in the record that such was the case; and is immaterial whether it was or not.   The executor had no power to grant the extension.

8.   The judgment of the Court of Appeals is excessive, because that court computed ten per cent. interest on the note instead of nine, from its maturity.

*Davis, Thoroughman & Warren*, for respondents.

1.   The evidence shows that the claim was exhibited to the executor under section 5 of the administration act, and the executor with the approval of the court, having prevented the allowance, by the agreements for extension, is estopped from availing himself of the limitation of Sec. 6, of the same act.   That the executor himself applied for the indulgence granted is sufficient to take the claim out

of the statute. *Calanan v. McClure*, 47 Barb. (N. Y.) 206; *Cartwright v. Greene*, Ib. 479; *Harrison v. Jones*, 33 Ala. 258; *Puckett v. Janus*, 2 Humph. (Tenn.) 565; *Cheeseman v. Kyle*, 15 Ohio 15; Herman on Estoppel, §§ 418, 420; *Wells v. Miller*, 45 Ill. 33.

2. The executor had the power to make the agreements for extension. *Smarr v. McMaster*, 35 Mo. 351; *Kee v. Kee*, 2 Grattan 116, 128; *Boyd v. Ogelsby*, 23 Gratt. 674; *Williamson v. Anthony*, 47 Mo. 299; Williams on Executors, 1196; W. S., p. 74, § 29.

3. The claim was substantially exhibited within the meaning of the law, under §§ 15, 16 and 17, of the act, (W. S., p. 104,) within two years after letters granted; and the subsequent delay in establishing it does not prejudice the right of recovery. *Tevis v. Tevis*, 23 Mo. 258; *Williamson v. Anthony*, 47 Mo. 300; *Wells v. Miller*, 45 Ill. 33; *Wile v. Wright*, 32 Iowa 451; *Stiles v. Smith*, 55 Mo. 368. A substantial compliance with the statute is all that is required. *Gansevort v. Nelson*, 6 Hill 389; *Wells v. Miller*, 45 Ill. 33; *Mason v. Tiffany*, 45 Ill. 392; *Johnson v. Corbett*, 11 Paige 265; *Cheeseman v. Kyle*, 15 Ohio 15; *Flinn v. Shackleford*, 42 Ala. 202; *Boyd v. Ogelsby*, 23 Grattan, 674.

NORTON, J.—This suit was instituted in the circuit court of St. Louis county, on the 30th of April, 1872. It is founded on a note dated March 14, 1867, for $24,000, payable to plaintiffs three years after date, and executed by one Isaac Walker, with interest at ten per cent. after maturity.

It is alleged that said Walker died in October, 1868, leaving a will in which Thomas A. Walker was appointed executor, to whom letters testamentary were duly issued by the probate court of St. Louis county, on the 10th of December, 1868; that the said Isaac Walker, in his life time, to more effectually secure the payment of said note, executed to plaintiffs a deed of trust to certain property in St. Louis county, from the proceeds of the sale of which plaintiffs, on the 18th of April, 1872, received the sum of $17,226.-

21; that all interest on said note up to September 14th, 1871, had been paid, and that the balance was due and unpaid. The answer of defendant sets up that letters testamentary were issued to defendant on the 10th of December, 1868, and that on the 17th day of said month, he gave the required statutory notice that letters testamentary had been granted him, and that all creditors should present their claims for allowance within two years, &c.; that the note in question was not exhibited nor allowed by the probate court, and that no suit was brought thereon within two years after the publication of said notice. It was further alleged that said note had not been exhibited or proved, and that no suit had been brought thereon within three years after the publication of said notice

To this answer plaintiffs filed a replication in substance as follows: 1st. They admit that the note sued on was not presented for allowance or allowed in the probate court, and that no suit was brought on it within two years after the executor had published his said notice; but the plaintiffs allege that said note was exhibited to the executor within two years after granting of his letters, and within two years after he published his said notice, and within two years after the note became due, and that suit was begun on the note withing three years after the note became due. 2nd. The plaintiffs allege that the note in question was exhibited to the executor within two years after letters were granted to him, and that this suit was begun within three years after the note became due. 3rd. That the plaintiffs and executor on February 8th, A. D. 1870, entered into a written agreement, by which the time of payment of said note was extendend to one year from March 14th, 1870, the executor agreeing to pay nine per cent. interest on the note during the extended time. It is also further alleged therein that a similar agreement in writing was made on the 28th day of February, 1871, whereby the time for the payment of said note was extended another year from March 14th, 1871, to March 14th, 1872·

that both these agreements were filed in the St. Louis pro-
bate court, with the papers of the estate of said Isaac
Walker; that under said agreements they were not bound
to present said note for allowance within two years after
notice, nor to sue on the same within three years from the
publication of the executor's notice. A demurrer was filed
to so much of the replication as set up the agreements to
extend the time of payment of said note from March,
1870, to March, 1871, and to March, 1872. The cause was
tried by the court and a judgment rendered for defendant,
which was, by the general term, affirmed, from which
plaintiffs appealed to the St. Louis Court of Appeals,
where, upon a hearing, the judgment was reversed, and
judgment rendered for plaintiffs for the balance due on
their note, from which judgment defendant has appealed
to this court.

On the trial, at defendant's instance, the court gave
an instruction to the effect that, if the executor duly pub-
lished in December, 1868, the statutory notice of the grant
of letters testamentary to him, the plaintiff's claim was
barred by the statute. The question decisive of this case,
and presented by the record for our determination, is
whether the facts disclosed in the evidence warranted the
court in giving the above declaration of law. The proper
determination of it involves a careful examination of the
evidence, and, from it, it appears that this suit was com-
menced in April, 1872, on a note executed by the decedent
for $24,000, dated March 14th, 1867, payable three years
after date, with interest from maturity, at 10 per cent.;
that, at the time of its execution, six notes were executed
for interest on the principal sum, at the rate of eight per
cent., payable in six, twelve, eighteen, twenty-four, thirty
and thirty-six months; that, to secure both the principal
and interest notes, Walker, the maker, executed a deed of
trust on certain real estate in the city of St. Louis. Walker
died in October, 1868, and letters testamentary were grant-
ed on his estate on the 10th of December, 1868, and the re-

quired statutory notice of the granting thereof was duly published on the 17th of December, 1868. Thomas B. North, one of the plaintiffs, testified as follows: that about four months after Walker's death, he showed the notes and deed of trust to the executor, and had a conversation with him in regard to them. He said he knew all about the claim, and that it was all right; that he did not know whether it was necessary for the notes to be presented to the probate court or not, but that he admitted the claim as valid, and would appear and waive all objections and notice if witness would present them; that he took the note to the probate court for allowance in open court, and the executor waived all objections and the judge of the court said that it was valid, but that it was unnecessary to make a formal allowance, as the debt was not then due; that the interest notes were paid by the executor as they became due; that, early in the spring of 1872, the executor called upon him in regard to the note and said that it would soon mature, and he wanted to arrange for its payment; that property was then low, and he did not want it sacrified under the deed of trust; that the claim was just, and he wished to procure an extension for the benefit of the estate for one year from maturity; that at his request the written agreement of February, 1870, was made, and was by him filed in the probate court; that, at the request of witness, the executor procured and filed a certified copy of the deed of trust on the 24th of March, 1870; that the property was sold under the deed of trust on the 18th April, 1872, and realized $17,226.21, which was credited on the note, and that the balance was due; that, but for the solicitation of the executor and his written agreement, he would have formally exhibited and proved the claim against the estate within two years after letters testamentary were granted. The evidence also shows that the original interest notes were paid by the executor, and also two or three of the interest notes, under the agreements of 1870 and 1871, extending the time of payment of the note,

and receipts therefor filed by him with the papers of the estate in the probate court. Under the agreement of the 8th February, 1870, signed by the executor and plaintiffs, the time for the payment of the note was extended to the 14th March, 1871, and, under a similar agreement made the 28th February, 1871, the time of payment was extended to the 14th March, 1872.

It is argued by defendant's counsel that the executor had no power to make the said agreements, and that notwithstanding the facts shown by the evidence the bar of the statute created by Sec. 2 and Sec. 6, 1 Wag. Stat., 102, applies and prohibits a recovery for plaintiffs.

The question then arises, had the executor the power to to make the agreements read in evidence, extending the 1. POWER OF AD-MINISTRATOR TO OBTAIN EXTEN-SION OF NOTES. time for the payment of the note after it matured, and if so, what was their effect. This question we think is answered by the case of *Smarr v. McMaster*, 35 Mo. 351. In that case McMaster was the security of one Schnitter on a note payable to Smarr. After the death of McMaster, the note was presented as a claim against his estate. The administrator resisted its allowance on the ground that after the death of McMaster Smarr agreed with Schnitter to extend the time of payment of the notes, Schnitter executing to Smarr a deed of mortgage as a further security. On the trial, Smarr offered to prove that the administrator of McMaster consented to this agreement. This evidence was rejected by the trial court on the ground that the administrator had no power to enter into the agreemeemt and thus bind the estate. The judgment was by this court reversed, because of the rejection of that evidence, and it was expressly held that the administrator, under the general authority given him to preserve the estate, had the power to consent to the extension. It is argued that that case has no application here, " because the question there was whether the administrator in consenting that the creditor should give further time, discharged the security." This, we think, is

a misapprehension. The agreement between Smarr and Schnitter to extend the time of payment, in law, had the effect to discharge Schnitter's security from any further liability on the note, unless it was made with the consent of the surety. McMaster, the security, could not consent to it, because he was dead when it was made; his administrator did consent to it, and the question before the court was not as to the legal effect of such consent, but whether he had the power to give his consent at all, so as to bind the estate of McMaster. The court decided that he had this power, and the legal effect of its exercise by him was to bind the estate to the payment of a debt, which but for its exercise would have been exempt. The court appears to have decided this as a mere naked, legal proposition, without reference to the consideration as to whether such agreement was advantageous or otherwise, to the estate. It does, however, appear in the case that the principal debtor, Schnitter, gave additional security by mortgage on land, which decreased the probabilities that the estate of McMaster would suffer loss, inasmuch as such additional security would have inured to the benefit of the estate, in the event of its being charged with the payment of the original debt.

In the case before us the inducement to the agreements, as shown by the evidence, was to prevent a sacrifice of the property conveyed by the deed of trust. This is shown by the fact that the executor applied for the extension for the reason as stated by him, that property was low, and if sold at the maturity of the note, it would be sacrificed, that the extension was granted, the executor agreeing to pay nine per cent. interest in semi-annual payments, which was one per cent. less than the note bore on its face after maturity. The evidence does not show that there was any money in the hands of the executor applicable to the payment of this demand, and does show that the agreements extending the time of payment were made in good faith, and with the sanction of the probate court, as implied from the fact

that they were filed in the office of the court, as well as the receipts for the payment of interest growing out of them. The agreements were not entered into for the purpose of reviving an extinct claim, or creating a liability where none existed before, for at the time they were entered into the demand of plaintiffs was perfectly valid, and the liability of the estate to its payment undisputed. The demand could then have been enforced, and would have been according to the evidence, but for these agreements, the effect of them being not to create a new obligation, but simply to extend the time within which a debt, then in full vitality might be discharged. That an executor or administrator cannot revive a demand against an estate which has once been barred under the administration law, is unquestioned. The question in this case involves no such principle, but simply whether the executor could rightfully make an agreement, whereby the time for payment of an existing demand was extended. That he could do so is settled by the case of *Smarr v. McMaster, supra.*

If then, under the law, these agreements could be made, and were in fact made, and if, under the evidence, **3. LACHES OF CREDITORS: what is not.** the plaintiffs in consequence thereof were prevented from proving up their claim within two years after publication of notice, or within three years after grant of letters, it is difficult to perceive on what principle laches can be imputed to plaintiffs and defendant allowed to interpose the statutory bar of either two years under Sec. 2, or three years under Sec. 6, Wag. Stat. 102, especially when the evidence shows that in four months after Walker's death, plaintiffs and the executor appeared in the probate court, and the executor waived service of notice and the demand was not then allowed, because it was not due; and also further shows that on the 24th of March, 1870, within two years after the notice was published, the executor, at the instance of plaintiffs, filed in the office of the probate court a certified copy of the deed of trust in which both the principal note and the interest notes were

described, and that these interest notes were paid by the executor, and filed with the papers of the estate, with the approval of the court, as vouchers.

These facts, connected with the further facts that the agreements for the extension of payment were made to

3. ——: sections 2 and 6, Art. 4, Wag. Stat.

prevent a sacrifice of the property, and that the note after maturity bore 10 per cent. interest, and that, by virtue of the agreements, the rate of interest was changed from 10 per cent. to 9 per cent., from the 14th March, 1870, to the 14th March, 1872, thus diminishing the interest to the extent of 1 per cent. during that period, amount to a substantial compliance with the law and brings it within the principle decided in the case of *Williamson v. Anthony, Admr.*, 47 Mo. 299. There an administrator having a demand against the estate of which he was administrator, presented the same to the probate judge, who, without appointing, as the statute required, some suitable person to defend, allowed the claim. Four years afterwards, the error was discovered, the matter was then again brought before the court, and the statutory bar of two years was interposed as a defense. It was there held that common justice required that the original irregular proceedings should be considered as amounting to such exhibition and application for allowance, as to prevent the statute from being interposed as a bar; that, while men must be held responsible for their ignorance of the law, and will not be excused in disregarding its provisions, still their errors, while acting in good faith, will be viewed with liberality, and a substantial compliance be held sufficient. These authorities seem to dispose of the questions in this case, and under them we cannot perceive how the Court of Appeals could have reached any other conclusion than the one it did.

That court, after reversing the judgment of the circuit court, rendered final judgment for plaintiff, calculat-

4. INTEREST.

ing interest at 9 per cent. till the 14th March, 1872, after which it was calculated at 10 per cent. The

interest, we think, was computed on the proper basis, as, under the agreement between plaintiffs and Walker's executor, the rate of interest, till then, was stipulated to be 9 per cent. This agreement only operated as a temporary suspension of the rate specified in the note, and when that time expired, the rate named in the body of the note, furnished the true rule for computing it.

The judgment of the Court Appeals, in reversing the judgment of the circuit court, and in rendering final judgment for plaintiffs, is affirmed, with the concurrence of the other judges. AFFIRMED.