MARY C. POWELL, Defendant in Error, v. WILLIAM F. POWELL, ADMINISTRATOR OF W. A. POWELL, DECEASED, Plaintiff in Error.

Kansas City Court of Appeals, November 22, 1886.

1. ADMINISTRATION—CARE OF LIVE STOCK AND CROPS AND MAKING REPAIRS UNDER SECTIONS 100 AND 101, REVISED STATUTES.—Under the provisions of sections 100 and 101 of the administration act, the administrator is authorized to "procure indispensable labor," etc. This authorizes him to hire and board hands and to buy food, where necessary to preserve the property, and the statute contemplates that *the estate* should pay this expense, and the claim may be allowed in favor of the meritorious party *against the estate* by the probate court.

2. ——— LIMITATION OF PERIOD TO NEXT TERM OF COURT—FURTHER ORDER AT TERM.—The statute only contemplates that the administrator should exercise the given power in vacation, until the first meeting of the probate court, and thereafter the power and discretion of continuing the provisional arrangement is lodged alone in the probate court. The grant of power being limited to this period, all persons dealing with him, or acting under his directions, must take notice of the limitations of his authority.

3. PRACTICE—DUTY OF COURT WHERE FACTS ARE UNDISPUTED.—Where the facts are undisputed or clear, the court should apply the law and determine the case.

ERROR to Callaway Circuit Court; HON. G. H. BURCKHARTT, Judge.

*Reversed and remanded with directions.*

The case is stated in the opinion.

CREWS & THURMOND and BOULWARE, for the plaintiff in error.

I.    It was the duty of the administrator to furnish all the necessary labor and care to preserve the estate, and to make report to probate court at its next meeting, and upon his application the court had authority to order an appropriation for payment of the same. Sect. 100, Rev. Stat. And *the court* may order all *further* labor to be done which may be necessary for the preservation of the estate. Sect. 101, Rev. Stat. · The labor, if any, of plaintiff, was not done by order of the court, nor has the administrator asked the court to order that it be paid for out of the estate. The probate court had no power or authority to appropriate the funds of the estate for any purpose except such as the statute specially directs, and then only when asked to do so by the proper party.

II.    Probate courts are creatures of the statute, and can do nothing except when the statute gives power to do so. Such courts take nothing, as to the exercise of such powers, by implication. *Powers v. Blakey*, 16 Mo. 437; *Lake v. Meier*, 42 Mo. 389; *Coil v. Pitman*, 46 Mo. 51; Kelley's Probate Guide; *Baldwin v. Whitcomb*, 71 Mo. 651.

III.    Plaintiff's claim accrued *since the death* of William A. Powell. It is no debt or demand against his estate. It cannot be allowed and classified. The probate court had no power to pay [allow] such claim until asked to do so by the administrator. Sects. 100 and 101, Rev. Stat. No order was made by the court directing that the work and labor be done by the plaintiff, nor has the administrator asked that the court order an appropriation for payment of same, as expenses for administration, or for the preservation of the estate. The court has no jurisdiction or power to order the assets of the estate

applied to the payment of a claim growing out of a contract made with the administrator, unless it had been ordered by the court *prior* to the creation of the demand, or when the administrator *asks for such order.* *Smarr v. McMaster*, 35 Mo. 349; sect. 100, Rev. Stat.

IV. The court should have declared the law as asked by defendant, and defendant's demurer to the evidence should have been sustained.

S. B. COLLIER, A. FINLEY and JOHN A. HOCKADAY, for the defendant in error.

I. The probate court has original, exclusive jurisdiction over all matters pertaining to expenses of administering of estates. Const. Mo., art. 6, sect. 34; sects. 1176, 192, 100 and 101, and the tenth sub-division of sect. 292, Rev. Stat.; *Mayberry v. McClurg*, 51 Mo. 256; Co. Litt. 291*b*; *Moore, Executor, v. Brown, Admr.*, 14 Mo. 165. The *manner* of its exercise, although not in strict accord with the letter of the statute, if it comes within its spirit and purpose, it is sufficient. *In re Bomino's Estate*, 83 Mo. 441; *Dubois v. Sands*, 43 Barb. [N. Y.] 412. The rule limiting probate jurisdiction to statute authority is not altogether without exception. 76 Mo. 296.

II. The purpose of the statute was to secure the preservation of the property of estates from destruction and injury, by providing means for its security and protection, through the administrator and the probate court, whose authority is absolute and complete. *Smarr v. McMaster*, 35 Mo. 351. The action of the probate court in sanctioning the expenditure for the preservation of the property, after it was done, instead of authorizing it in advance, was a substantial compliance with the statute, and legalized the action of the administrator in the premises. Brown's Legal Maxims (Ratification), 539. The contract was a legal and valid one against *the estate*, and the failure of the administrator to advise the court of

it, at its next meeting thereafter, does not avoid the contract.

III.   The widow's quarantine rights extended to the entire farm.   Sect. 2205, Rev. Stat.

IV.   Plaintiff's compliance with the terms of the contract, bound the estate to pay a reasonable compensation.  ˙ The estate must meet the liability.   *Hay*, *Admr.*, *v. Walker*, 65 Mo. 17 ; 2 Greenl. on Evidence, sect. 108 ; sect. 100, Rev. Stat.

PHILIPS, P. J.—This controversy arises on the presentation for allowance of a claim in favor of Mary C. Powell against the estate of her husband, William A. Powell.   Said William died intestate in Callaway county, in the month of June, 1884.   In the same month letters of administration were granted on his estate to Wm. F. Powell, father of the deceased.   Belonging to the estate were a large number of cattle, hogs and sheep.   The widow, with the minor children, remained in possession of the dwelling house and messuage.   It was the wish of the deceased, expressed just before his death, that the said stock be retained on the farm until they were sold under administration.   On consultation between the widow and the administrator it was mutually deemed best for the interest of the estate that the stock be so retained, and not sold until the following March.   The administrator furnished the hands to care for the stock, who were boarded by the widow on the farm.   She was to have the use of the milk and butter produced by the cows.

Nothing was said between the parties to this arrangement about any compensation to the widow on this account.   During the time of her occupancy of the dwelling house she had some repairs made thereon, for which she paid.

In August, 1885, she duly presented for allowance against the estate a claim for the board of the hands during the time the stock were kept on the farm, for

pasturage, etc., used by the stock, and for the amount of said repairs, amounting in the aggregate to four hundred and seventy-nine dollars.

The probate court allowed this account, after deducting certain credits, for the sum of $286.45. The administrator appealed to the circuit court, where on trial *de novo*, the claimant again prevailed, and had judgment for two hundred and eighty-six dollars, from which the administrator prosecutes this writ of error.

I.   The first observation, suggested by the admitted facts, is, that none of the acts in question were done under the sanction or order of the probate court. As to the item of the account for repairs to the dwelling house, it is conceded there was no order of the court authorizing it to be done, and that it should be excluded. While the instructions, as shown by the bill of exceptions, would indicate that the court, sitting as a jury, held that this item was allowable, the phraseology of the judgment itself clearly indicates that the court did not include it in the amount of the judgment.

The more important questions to be determined are, as to the proper construction to be placed upon the following sections of the statute:

"Section 100.  If any person die, leaving horses, or other stock, that require attention, crops ungathered, property so exposed as to be in danger of loss in value, or work in an unfinished state, so that the estate would suffer material loss from the want of care and additional labor, the executor or administrator may, until the meeting of the court, procure such indispensable labor to be performed, on the most reasonable terms that he can.

"Section 101.  The court, on the application of any person interested, may, in such cases, authorize further labor to be performed, as the interest of the estate requires, and all sums thus paid, if approved by the court, shall be allowed as expenses of administration."

Vol. xxiii—24

The contention of defendant in error is, first, that the intendment of the statute is not to create a claim against the estate in favor of the third party, who may furnish these supplies to the administrator, but it contemplates that the administrator shall furnish them, and receive credit therefor in his settlement; and, second, that the statute does not recognize the right of the administrator to make such provisional arrangement longer than the vacation of court.

As to the first proposition, it is true that the general provisions of the statute for allowance of demands against estates apply only to demands existing at the time of the death of the intestate or testator. But it occurs to me that the provisions made in said sections 100–101 are exceptional, and were designed to meet an emergency not hitherto provided for.

Section 100 expressly authorizes the administrator to "*procure* such indispensable labor." Unquestionably this authorizes him to hire and board hands and to buy food, where necessary, to preserve the property. Equally clear is it that the statute contemplates that the estate should pay this expense. It is not a personal matter or undertaking of the person upon whom the burden of administration is cast. He is acting solely in an official or trust capacity, for the exclusive benefit of the estate. The law ought not to, and we think did not, intend that an administrator should advance the necessary funds out of his own pocket for the protection of the beneficiaries of the estate. A person might die leaving a large number of cattle in the midst of winter, needing daily care and food; not one dollar in money may be found among his effects. The administrator, in fidelity to his trust, should provide the necessary care and sustenance to prevent this property from perishing or depreciating. He may not have in his own right any means to advance for this purpose. What is he to do? What does this statute declare he may or should do? He should

"*procure* such indispensable labor to be performed," to be "allowed as expenses of administration."

The general rule of law, as well as of reason and justice, is that the authority to have a thing done by an agent or trustee implies that the principal, who receives the benefit, must pay therefor. *Copp v. St. Louis Co.*, 34 Mo. 388.

Wagner, J., in commenting on this same provision of the statute, in *Merritt v. Merritt* (62 Mo. 155), said : " In all the instances enumerated in this section of the statute, the executor or administrator has full authority to act, and whatever he does is legalized."

A thing within the intention of the legislature in framing a statute is sometimes as much within the statute as if it were within the letter. *In re Bomino's Estate*, 83 Mo. 441.

It was clearly within the intention of the legislature that the expenses attending the exercise of the power lodged in the administrator should constitute a charge against the estate to be discharged out of the assets.

The account must be presented to the probate court for its inspection and approval. What difference can it make to the parties in interest whether it be presented for allowance by the administrator or the party who gave the credit? The law looks to substance rather than mere form.

An administrator refuses to pay for the necessary supplies. What is the remedy of the party who has done the work, procured to be done by the administrator in the exercise of the statutory power?

It is not a personal undertaking of the administrator. He could not be made liable on the ground that he had acted without a responsible principal, or without warrant of law. He could not obtain the credit on settlement made, for he has not in fact paid out the money.

The court for the protection of the estate against unreasonable provision made by the administrator, is to pass upon the claim.

It would, in my opinion, be sticking in the bark to say the claim can only be allowed as a credit to the administrator, instead of allowing it in favor of the meritorious party, whom the statute authorized the administrator to employ.

We think the conclusion reached by us is sustained by the principle of the case of *Smarr v. McMaster* (35 Mo. 351), followed in *North v. Walker* (66 Mo. 453).

II.   The other objection is, that at all events the statute only contemplates that the administrator should exercise the given power in vacation, until the first meeting of the probate court, and thereafter the power and discretion of continuing the provisional arrangement is lodged alone in the probate court.

We do not see any legal escape from this proposition.   Section 111 of this statute evidently contemplates that within a reasonable time after the grant of letters of administration, "after the appraisement," the administrator "shall sell at public sale all goods and chattels of the deceased that are liable to perish, be consumed, or rendered worse by the keeping."   It was in the mind of the legislature, in framing this statute, that such property would not ordinarily be kept on hand but a short time, and if for any extraordinary cause or sufficient reason it should be longer retained by the administrator without sale, the court, at its first meeting afterward, would pass upon and direct the further course to be pursued.

So section 100 empowers the administrator to act upon his own judgment during the vacation of court, "until the meeting of the court."

And section 101, following up the plan, provides that the court, on the application of any person interested, may, in such case, authorize further labor, the expenses attending the same to "be allowed as expenses of administration."

The grant of power to the administrator to act *sua*

*sponte,* being limited to the period intervening between the grant of his letters and the meeting of court, all persons dealing with him or acting under his directions, must take notice of the limitations of his authority. Having proceeded outside of the statute, in their domestic arrangement for keeping this property over the winter, they must look outside of the law for a remedy to enforce the arrangement. Any other construction of the statute would thwart its policy, which is to keep administrators in charge of estates under constant restraint, and the supervisory control of the probate judge.

It results from the foregoing view, that only that portion of the account, if otherwise regular, which accrued prior to the meeting of court can be allowed against the estate.

III. The only remaining question is one of law and fact: Did the claimant render the services in question under contract, express or implied?

She admits that nothing was said about the pay. There was, therefore, no express contract. Was there any implied agreement? In other words, are the facts in evidence such as the law will imply an undertaking or obligation for compensation to the claimant.

Where the facts are undisputed or clear, the court should apply the law and determine the case. The evidence of both parties agree that it was the wish of the intestate that this property should remain on the farm until sold, and that in deference to his wishes, and believing it would be best for all concerned, the widow and administrator acceded thereto, and deferred the sale until March following.

The clear and reasonable conclusion is, that as the widow was to occupy the farm during her quarantine, and her own interests were to be subserved, and the wishes of her dead husband were to be respected, no charge was to be created in her favor against the estate, by pasturing the stock on the premises during the sum-

mer months, as the court would sit in August. This con-
clusion is further sustained by the admitted arrangement
that the widow was to enjoy the use of the milk and
butter produced by the cows.

The law will not raise any implied contract for com-
pensation under such a state of facts.

As to the item for board of hands, up to the meeting
of the first term of the probate court we are of opinion that
the claim is sustained. It cannot be maintained that it
was in the contemplation of the administrator that the
widow should defray the expense of boarding the hands.
If the administrator was to furnish the hands, the pre-
sumption is that he should board them, and when he left
them for the widow to board the law implies that she
should be compensated therefor.

IV.    The claimant allowed on her whole account, as
presented for allowance, certain credits consisting of
claims against the estate.

Of course, in disallowing her claim against the estate,
she would not be precluded thereafter from asserting her
right to the amounts thus credited, provided they are
otherwise admissible.

It results from the foregoing opinion that the judg-
ment of the circuit court is reversed, and the cause
remanded with directions to the trial court to re-try the
case as to the items for board of hands, if any, up to the
time of the meeting of the probate court after the grant
of letters of administration, and to certify its judgment
thereon to the probate court, as by law provided. All
concur.