P. A. DESGRANGES, Respondent, v. L. NEWBAUER, Admr. of Owen-Delaney Stave & Lumber Company, Appellant.

St. Louis Court of Appeals. Argued and Submitted June 9, 1910. Opinion Filed June 14, 1910.

1. PARTNERSHIP: Action for Guaranty: Variance in Firm Name Not Material: Evidence. Where a firm, the assets of which were being administered after dissolution by death of the partners, was spoken of as "Owen Bros." as well as by the name "Owen-Delaney Stave & Lumber Company," evidence that claimant guaranteed payment of a bill for corn sold to "Owen Bros." was not fatal to the establishment of his claim against the assets of the Owen-Delaney Stave & Lumber Company.

2. GUARANTY: Form: Duebill. Where one intending to guarantee the payment by a partnership of the price of articles sold and delivered to it, wrote his "O. K." on the bill made out against it, and the articles would not have been delivered without the guarantee, it is not correct to say that such person merely guaranteed the payment of a duebill.

3. PARTNERSHIP: Action for Guaranty: Death of Partner: Contract of Surviving Partner not Administrator: Executors and Administrators. Where a claimant filed a demand in writing against the administrator of a partnership dissolved by the death of the partners, sufficiently specific to authorize proof that he had guaranteed an account of the firm for corn, purchased after the death of one of the partners, but before administration, with which to feed stock belonging to the firm,

and had been compelled to pay a large portion of the price, it was not material that the claim did not show that it was for corn purchased for the protection of the firm's stock, or was made under an agreement with an administrator, or pursuant to an order of the probate court, under sections 100, 101, Revised Statutes 1899, providing that if a person dies leaving stock requiring attention, the administrator may, until the meeting of the court, procure labor on the most reasonable terms that he can, to care for them, etc., the cost of which shall be allowed as expenses of administration; such sections not being applicable to administration of the estates of partners, which is governed by article 3, chapter 1, Revised Statutes 1899.

4. ———: ———: ———: ———: Enforcibility of Contract Against Administrator: Executors and Administrators. On the death of a partner, the assets and business of the firm were contracted and continued by the survivors without administration until the death of another partner, when, more than three years after the firm was originally dissolved by the first partner's death and more than a year after the second partner died, administration proceedings were instituted on the partnership assets, but not on the individual interests or estate of the partners. Held, that a claim on a guaranty for corn sold to the surviving partners intervening the death of the first and second partner and required to preserve the firm's live stock, on which guaranty claimant was compelled to pay a large part of the price, was a valid claim against the administrator of the partnership assets.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Brown & Gallivan* for appellant.

(1) Defendants demurrer to plaintiff's evidence should have been sustained. The plaintiff by his witness, J. E. Shelby, shows that he guaranteed a duebill for corn for Owen Bros. made by W. A. Rooker, who claimed to be agent for said Owen Bros. This is a failure of proof, the allegations of his account and petition are against Owen-Delaney Stave & Lumber Company, for balance on corn, and not liability on account of his

being guarantor of a duebill. Beck v. Ferrara, 19 Mo. 30; Price v. Railroad, 72 Mo. 414. (2) Defendants' demurrer should have been sustained to plaintiff's evidence; the claim not being for corn furnished for protection of stock of this defendant company, but guarantee of duebill to Shelby, signed Owen Bros. by W. A. Rooker and not made with an agreement with administrator nor by order of the probate court, and a claim accruing after death of one of the partners. R. S. 1899, secs. 100, 101; Powell v. Powell, 23 Mo. App. 365. (3) Plaintiff cannot recover against this defendant, the proof shows his claim accrued after the death of one of the partners and that the same was not made by an order of the probate court, nor with an agreement with the administrator. R. S. 1899, secs. 100, 101; Powell v. Powell, supra. (4) Plaintiff to recover in the case should have, as an interested person, applied to the probate court and under its order protected the stock from starvation, this he did not do. R. S. 1899, sec. 101; Powell v. Powell, supra. (5) This plaintiff cannot recover in this case, the proof shows him a guarantor of a duebill and not so under contract with anyone who was authorized to make such an agreement, and all demands against an estate must come within the statute. R. S. 1899, secs. 100, 101. (6) All demands against any estate accruing after death must be those authorized by statute and made either by order of the probate court or with the administrator of said estate. Powell v. Powell, supra; State ex rel. v. Walsh, 67 Mo. App. 352.

*Brewer & Riley* for respondent.

(1) The estate of the partnership is liable for the necessary and reasonable expenses in caring for and preserving said estate. And while the partnership of Owen-Delaney State & Lumber Company was dissolved by the death of John Owen, yet Delaney, one of the surviving partners, had the power to bind the assets of

the partnership that was necessary to preserve, protect and take care of the firm's assets. And as the claim of the respondent's filed in this cause was for feed necessary for the live stock belonging to the firm, the finding of the court was for the right party. Trust & State Deposit Co. v. Respass, 56 L. R. A. 479; Scudder v. Ames, 89 Mo. 510. (2) Again, upon the death of John Owen the surviving partners held the property of the partnership in trust. Bredow v. Saving Institution, 28 Mo. 181; Hargadine v. Gibbons, 114 Mo. 566. (3) The said Delaney being a trustee, and the assets of the estate being a trust property, the estate is bound by any act of the trustee necessary to preserve said trust property and any debt created and necessary for that purpose is a charge against the estate of the said partnership. 10 C. L. 2196, sec. 13; 2 Perry on Trusts (4 Ed.), sec. 907. (4) Under the common law the surviving partner, without any authority from any court, administered the estate of the partnership and had full power to do whatever was necessary for that purpose. He could continue a suit which had been filed in the partnership name without joining the administrator of the deceased partner. He could dispose of such assets by sale, mortgage, pledge or assignment, and the same right to prefer or secure creditors in the various modes permitted by the law that the partners jointly had while all were living, and he still has all the powers that he had under the common law, except those that are inhibited by statute. (And there is no statute prohibiting from incurring expense necessary for the preservation and care of the assets belonging to said estate.) Crook v. Tull, 111 Mo. 283; Meriwether v. Railroad, 128 Mo. App. 647; State ex rel. v. Withrow, 141 Mo. 69.

REYNOLDS, P. J.—A partnership, composed of John Owen, Phillip Owen and Clarence Delaney, under the name of Owen-Delaney Stave & Lumber Company, existed on the 26th of December, 1905, and prior there-

to. On the 26th of December, 1905, John Owen, one of the partners, died. No administration of his estate or on the partnership estate appears to have been taken out, but the surviving partners appear to have continued the business, so far as appears by the record, and in February, 1907, the firm had at their millsite a lot of hogs, mules and cattle but no corn with which to feed the stock. At that time one Rooker had charge and control of the business of the partnership, having been put in charge of it, as agent or representative of the firm, by Delaney, one of the partners. In this February, 1907, Rooker, acting for the partnership, which appears also to have been known as the Owen Bros., undertook to buy from one Shelby a lot of corn, amounting in value to $149, with which to feed the stock. It appears that the stock was in the swamp or in lowland and it was apprehended that the high water would, in a very short time, render it impossible to get feed in to the stock. Shelby declined to sell the corn to Rooker or to the firm, unless Rooker paid cash for it, and while it was being unloaded, Shelby informed Rooker that he would load it up again and haul it all away, unless it was paid for. After some talk between them Shelby agreed that he would let Rooker have the corn for the firm, provided he (Rooker) would get some responsible party to guarantee payment of it. Among other names suggested was that of the plaintiff Desgranges, and when his name was mentioned Shelby said that he was "as good as gold," and that his guarantee would be amply sufficient. Thereupon plaintiff being called in agreed to guarantee the bill, and the bill being made out for the corn, amounting to $149, plaintiff wrote under it "O. K.," and signed his name to it. Thereupon Shelby left the corn with Rooker for the firm at the millsite of the firm, the corn being afterwards fed to the stock of the firm. Neither Rooker nor the firm paying for the corn, except thirty-four dollars on the account, plaintiff paid the balance, amounting to $115.

Afterwards on September 12, 1907, Phillip Owen, another of the partners, died. Whereupon Newbauer, the present defendant, was appointed administrator of the partnership estate of the Owen-Delaney Stave & Lumber Company, the appointment being made by the New Madrid Probate Court in August, 1908. After the appointment of the defendant as administrator, plaintiff presented the account, on which the balance was one hundred and fifteen dollars, for allowance against the estate and proving it up was allowed by the probate court for the full amount claimed with interest. The administrator duly appealed to the circuit court, where on a trial anew the court, a jury being waived, heard the case and the above facts being in evidence, found for plaintiff and ordered the claim certified to the probate court for allowance in the fifth class against the estate. After making proper motions the administrator has duly appealed to this court.

Among the points made on this appeal by the administrator, is the point that the testimony of plaintiff showed that he had guaranteed a duebill for corn for Owens Bros., not for Owen-Delaney Stave & Lumber Company. It is true that in speaking of the partnership, it is spoken of as Owen Bros., but there is no evidence that there was any such firm, and there is evidence to the effect that the partnership referred to is that carrying on business under the name of Owen-Delaney Stave & Lumber Company. Nor is it correct to say that plaintiff merely guaranteed the payment of a duebill. It is true that he wrote his "O. K." on the bill made out against the firm for the corn, but the evidence shows conclusively that he was guaranteeing the payment by the firm to Shelby of the price of the corn and that on the strength of the guarantee the corn was delivered and that without that guarantee it would not have been delivered. Hence the cases cited by the learned counsel for the appellant, Beck v. Ferrara, 19

Mo. 30 and Price v. Railroad, 72 Mo. 414, l. c. 416-17, are not in point.

The further point is made that the defendant's demurrer to the evidence should have been sustained by reason of the claim not being for corn furnished for protection of stock of the defendant company and not made with any agreement with the administrator nor by order of the probate court, it being a claim accruing after the death of one of the partners. This is the real gravamen of the complaint of the appellant. Support of this is claimed in sections 100 and 101, Revised Statutes 1899, and in the cases of Powell v. Powell, Admr., 23 Mo. App. 365; State ex rel. v. Walsh, 67 Mo. App. 348, l. c. 352, and Price v. Railroad, supra. We do not see the relevancy of the citation to the case of Price v. Railroad on this point. The point in decision in that case is that the plaintiff must recover on the cause of action stated in his petition. Possibly the learned counsel for the appellant here are citing this in support of the proposition that the account, as filed with the probate court, does not set up the fact that the plaintiff had paid as guarantor. They did raise that point at the trial but were overruled. If that is the point to which the Price case is cited, we do not think that the citation either sustains the claim or that the point has any merit. The demand, as presented to the probate court in writing, was sufficiently specific to let the evidence in this case as to the character in which plaintiff had become creditor of the estate. State ex rel. v. Walsh, supra, refers to and quotes Powell v. Powell, Admr., supra. We do not find either of these cases applicable or controlling in the case at bar. They were cases arising out of the administration of an individual estate while the case at bar involves questions growing out of the administration of partnership assets and partnership estates. The application of that to the case at bar is that it sustains the right of this plaintiff, as

149 App—46

the party who had paid the claim, or made the guarantee, and on whose credit the corn was delivered, to exhibit the account for it in his own name against the estate. We find nothing in either of these cases to sustain the contention of appellant on his proposition. Nor is the case at bar one involving the administration of the estate of an individual, as those cases did, but involves the law concerning the administration of a partnership estate, on the death of one of the partners. Provision for administration of partnership estates is found in article 3, chapter 1, of our law of administration. [R. S. 1899, sec. 56 and following.] This has been the law of this state for very many years and it has always been held that a different rule prevails and a different law is to be applied when the courts are dealing with partnership estate from that involved and applied in the administration of an estate of an individual sole.

In Hargadine v. Gibbons, 114 Mo. 561, 21 S. W. 726, our Supreme Court has given very thorough consideration to the matter of the administration of partnership estates and Judge GANTT, who delivered the opinion, holds that the common law rule governing partnership estates by which a judgment in favor of a partnership survives on the death of a firm member to the surviving partners, has not been abrogated in this state; that the failure of a surviving partner to give the statutory administration bond, that it to say, to take out letters of administration, only subjects him to displacement in case the administrator of the deceased partner's individual estate should also qualify as the administrator of the partnership estate. Judge GANTT follows and quotes from the decision of Judge PHILIPS in Easton v. Courtright, 84 Mo. 27, in support of the proposition. He then states, as a necessary corollary (l. c. 566) that until the administrators of the deceased partners do qualify under the statute, the right of the surviving partners cannot be questioned; that the right of the

survivors to take the estate and pay the debts has ever been construed as a trust; that the surviving partners hold any surplus after the payment of debts, for the different partners, or their representatives, in proportion to their shares to the capital invested. Quoting further from Easton v. Courtright, supra, Judge GANTT says (l. c. 566): "Unlike an ordinary administrator, the surviving partner, being directly interested in the assets as part owner, had a direct interest to subserve in protecting the estate against false claims, improvident management, waste and spoliation." To the same effect see Goodson, Adm'x, v. Goodson, 140 Mo. 206, l. c. 215; 41 S. W. 737. While these cases are not entirely analogous in their facts to the case at bar, we think they afford a solution of the proposition presented here. For some reason not disclosed, no administration on the partnership appears to have been taken out until three years after, in law, the partnership was dissolved by the death of one of the partners. It does not appear that any administration on the estate of the individual partners was taken out at any time, but the assets, and so far as appears from the record, the business of the partnership was continued by the survivors until the death of one of them, and a year after that occurred, an administration appears to have been taken out, not on the individual interests or estate of the partners, but upon the partnership assets. In the meantime, and before the death of the second partner, it is to be presumed that expenses, even for the preservation of the property, to say nothing of carrying on the business, must necessarily have accrued, and there is no controversy whatever in this case over the fact that the corn for the payment of which plaintiff became surety or guarantor was actually used, was of the value charged, and went and was necessary to the preservation of the livestock of the partnership. The claim has had the careful scrutiny of the probate and of the circuit court, and under the facts in this case, peculiar to it, we think

that the judgment of allowance was within the power of the court and was correct. The judgment is affirmed. All concur.

