## BRIDGES, *Appellant*, v. STEPHENS.

### In Banc, March 3, 1896.

1. **Statute of Limitations, Oral Promise to Waive.** An agreement by the debtor, before the debt is barred, not to plead the statute of limitations need not be in writing, it not being an acknowledgment of indebtedness or promise to pay within the meaning of Revised Statutes, 1889, section 6973. (Per GANTT, J.; BRACE, C. J., and MACFARLANE, J., concurring. *Contra*, BURGESS, SHERWOOD, and ROBINSON, JJ.)

2. ————: ESTOPPEL. A debtor orally promising before the debt is barred to waive the statute of limitations in consideration of forbearing to sue is estopped from pleading such statute. (*I b.*)

3. ————: CONSIDERATION. An agreement not to sue is a sufficient consideration for a promise not to plead the statute of limitations. (*I b.*)

4. ————: PUBLIC POLICY. An agreement by a debtor before the debt is barred to waive the statute of limitations is not contrary to public policy. (*I b.*)

5. ————: RECEIVER OF NATIONAL BANK, AUTHORITY OF: PRESUMPTION. Where the plaintiff in an action against the defendant as receiver of a national bank charged, and the court found, that before the debt was barred defendant agreed, in consideration of plaintiff's forbearing to sue, to waive the statute of limitations, and the record recites that documentary evidence was introduced to show that prior to such promise when plaintiff communicated with the comptroller of the currency concerning the settlement of this claim the comptroller referred the question to defendant for action, it will be presumed on appeal that the documentary evidence was sufficient to satisfy the trial court that defendant was authorized to waive the statute. (*I b.*)

PER BARCLAY, J., CONCURRING.

1. **Statute of Limitations:** RECEIPT: IMPLIED PAYMENT OF MONEY. A written receipt given by a bank cashier for payment of money "in full of subscription" for shares of a proposed increase of stock of the bank, contains at least an implied agreement to deliver the stock or to account for the fund, and as such is governed by the limitation of ten years applicable to writings for the payment of money or property, under the Missouri decisions.

2. ———: STATUTORY CONSTRUCTION.  Where a statute has received a public and well known construction, its re-enactment in the same terms implies a legislative acceptance of that construction as part of the statute.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*Lee & McKeighan* and *Montague Lyon* for appellant.

(1) The circuit court erred in declaring the law to be that the appellant was not entitled to recover, because the promise and agreement of the respondent not to plead the statute of limitation was not made in writing.  It was not necessary that the promise or agreement should be in writing.  1 Wood on Limitations [2 Ed.], sec. 76, pp. 228, 229; 2 Herman on Estoppel and Res. Adj., sec. 825, pp. 955, 956; *North v. Walker,* 2 Mo. App. 174; s. c., 66 Mo. 453; *County of Vernon v. Stewart,* 64 Mo. 411; *Wright v. Pratt,* 17 Mo. 43; *Armstrong v. Levan,* 109 Pa. St. 177; *Daniel v. Board,* 74 N. C. 494; *Barcroft & Co. v. Roberts & Co.,* 91 N. C. 363; *Joyner v. Massey,* 97 N. C. 148; *Hill v. Hilliard,* 9 S. E. Rep. (S. C.) 639; *Lowry v. Dubose,* 2 Bailey (S. C.), 425; *Shreve v. Joyce,* 36 N. J. Eq. 44; *Smith v. Lawrence,* 38 Cal. 24; R. S. 1889, sec. 6789; *Walker v. Sayers,* 5 Bush (Ky.) 579; *Reid v. Hamilton,* 18 S. W. Rep. (Ky.) 770; *Randon v. Toby,* 11 How. (U. S.) 517.  (2) The circuit court erred in rendering judgment for the respondent, notwithstanding the fact that the court found from the parol testimony, admitted without objection on the part of the respondent, that the respondent promised and agreed not to plead the statute of limitation, and notwithstanding the fact that the court declared the law to be

that under the pleadings and evidence the appellant was entitled to recover, provided the causes of action were not barred by the statute of limitation pleaded by the respondent. The respondent's promise or agreement was sufficiently proven by the evidence, although not in writing and even though it was necessary that the promise or agreement should be in writing. *Montgomery v. Edwards*, 46 Vt. 151; *Ray v. Rood*, 62 Vt. 293; Browne on Statute of Frauds [4 Ed.], sec. 135, p. 151; *Hobart v. Murray*, 54 Mo. App. 249.

*George D. Reynolds* and *E. P. Johnson* for respondent.

(1) A receiver of a national bank acts under the direction of the comptroller and the courts, and any act requiring discretion, such as distributing assets or making contracts, when done by him without such direction, is without authority and void. There is no evidence in this case tending to show any such authority in respondent. *Kennedy v. Gibson*, 8 Wall. (75 U. S.) 498, p. 505; *Bank v. Kennedy*, 17 Wall. (84 U. S.) 19; *Ellis v. Little*, 27 Kan. 707. (2) *First.* The statute of limitations in force in this state (and most of the other states) prior to 1845, was that of 21 James II, and it did not require a promise to continue or revive a debt to be in writing. *McLean v. Thorp*, 4 Mo. 256, p. 259; Bishop on Contracts [En. Ed.], sec. 1362. *Second.* The act of May 9, 1828, Statutes at Large, 9 George IV, ch. 14, p. 18 (commonly called Lord Tenterden's act), engrafted the statute of frauds on the statute of limitations, and required such promises to be in writing. This latter statute was in substance enacted in Missouri (and many other states). R. S. Mo. 1845, p. 720, sec. 13, and is now sec. 6793, R. S. Mo. 1889. Under this statute a distinction is made between continuing and reviving a debt, the former being a promise before the bar has

attached, and the latter after it has attached. *McCormick v. Brown*, 36 Cal. 180. *Third*. The promise under the present statute must not only be an acknowledgment of the debt in writing, but must also include a promise to pay it, either directly or by necessary implication, in order to be effective. *Blackburn v. Jackson*, 26 Mo. 308; *Martin v. Branham*, 86 Mo. 643; *Chidsey v. Powell*, 91 Mo. 622; *Wells v. Hargrave*, 117 Mo. 563; *Kirkbride v. Gash*, 34 Mo. App. 256. *Fourth*. An agreement not to plead the statute of limitations is not a promise to pay the debt (1 Wood on Lim. [2 Ed.], sec. 76, pp. 228, 229), and such an agreement must be supported by a new consideration in order to make it binding. *Price v. Price*, 34 Iowa, 404; *Wilson v. Powers*, 130 Mass. 127, 128; *Greer v. Coos Bay Wagon Co.*, 23 Fed. Rep. 67; *Warren v. Walker*, 23 Me. 453; *Shapley v. Abbott*, 42 N. Y. 443. *Fifth*. Under Lord Tenterden's act, both the English and the American courts in the states where it has been enacted, have held that an agreement not to plead the statute must be in writing in order to be binding. *Hodgdon v. Chase*, 29 Me. 47; *Hodgdon v. Chase*, 32 Me. 169, and see *Brown v. Edes*, 37 Me. 318; and *Warren v. Walker*, 23 Me. 453; *Price v. Price*, 34 Iowa, 404; *Shapley v. Abbott*, 42 N. Y. 443; *Green v. Seymour*, 59 Vt. 459; *Greer v. Coos Bay Wagon Co.*, 23 Fed. Rep. 67; *Weatherwax v. Consumnes Valley Mill Co.*, 17 Cal. 344; *McCormick v. Brown*, 36 Cal. 180; Bishop on Contracts [En. Ed.], sec. 1362; 1 Wood on Lim. [2 Ed.], sec. 137, p. 373, on p. 374; 13 Am. and Eng. Encyclopedia of Law, p. 718, third paragraph of note 2. *Sixth*. Even a written acknowledgment of a debt, when made to an agent of the creditor, must be made with knowledge of the agency on the part of the debtor, in order to continue or revive it. *Williamson v. Williamson*, 50 Mo. App. 194. (3) The failure of appellant to preserve the evi-

dence and proceedings in this case in his bill of exceptions, is fatal to the latter contention, as other evidence and proceedings to sustain the judgment will always be presumed, and he who assigns error must make that error apparent. *Guinn v. Boas*, 31 Mo. App. 131; *Foster v. Nowlin*, 4 Mo. 23; *Vaughan v. Montgomery*, 5 Mo. 529; *Walsh v. St. Louis*, 73 Mo. 71; *State ex rel. v. Maloney*, 113 Mo. 372; *Flynn v. City of Neosho*, 114 Mo. 572.

GANTT, J.—The Fifth National Bank of St. Louis was duly organized under the laws of the United States for the organization of national banks. Its capital stock was $300,000. On the twenty-seventh day of November, 1886, a meeting of its stockholders was called to be held on December 11, 1886, to vote upon a proposition to increase the capital stock of said bank in the sum of $200,000. The meeting was held, and by a vote of over two thirds of the stockholders it was duly resolved "that under the provisions of the act of March 1, 1886, the capital stock of this association be increased in the sum of $200,000." There were subscriptions to this new stock amounting to $130,000, and among the subscribers therefor were Altheimer Brothers, for seventeen shares of the par value of $100 each and Julius Thoss for five shares. Thoss paid in the whole of his subscription on July 1, 1887, and Altheimer Brothers deposited on different days from February 1, 1887, down to and including October, 1887, $1,530 of the $1,700 by them subscribed. The whole amount of the proposed increase of capital was never subscribed and the certificate of the comptroller of the currency of the United States specifying the amount of said proposed increase of capital stock, with his approval thereof and that it had been paid in as

part of the capital stock of said bank, was never obtained.

On the eighth day of November, 1887, the said bank had become and was insolvent and suspended business and on the fifteenth day of November, 1887, the comptroller of the currency, having become satisfied of the insolvency of said bank, appointed the defendant, Lon V. Stephens, receiver of said bank and the said defendant at once qualified as such and took charge of all of its books, papers, and assets of every kind and character and has since administered upon the same under the direction of the comptroller.

Immediately upon assuming the direction of the affairs of said bank, the defendant, as receiver, caused notice to be duly given, of date November 15, 1887, that all persons having claims against said bank should present the same to him for allowance within three months from that date. In the meantime Altheimer Brothers had purchased and taken an assignment of the claim of Julius Thoss for $500, and on February 3, 1888, and within the time limited in said notice, duly presented the said claims for $1,530 and $500 above described, to said receiver, the defendant herein, for allowance and the same were rejected on February 4, 1888.

The claim of Messrs. Altheimer Brothers was founded upon the proposition that as they had subscribed for seventeen shares of the proposed increase of $200,000 and the amount proposed was never subscribed, they did not become stockholders by virtue of their subscription and payments thereon but were entitled to be treated as creditors of the bank upon its insolvency as was held in *Schierenberg v. Stephens*, 32 Mo. App. 314. The claim having been rejected it appears various efforts were subsequently made by

Messrs. Altheimer Brothers to obtain their allowance until December, 1890, at which time they again demanded that said claims be allowed, but the defendant again refused. Thereupon the evidence tends strongly to prove, and it was found by the court, that Altheimer Brothers informed defendant they would commence suit on said causes of action in January, 1891, whereupon defendant requested them not to do so; that he was desirous of adjusting said claims without suit.

The matter was allowed to drift along in this shape until August, 1892, when Messrs. Altheimer Brothers, through their counsel Mr. Montague Lyon, stated to defendant that inasmuch as five years from the appointment of defendant as receiver would expire November 15, 1892, they would be compelled to commence their action on said claims in order to avoid the interposition by defendant of the statute of limitations of five years as a bar to their action in the event said action were not commenced at the request of defendant prior to November 15, 1892, and that thereupon the defendant prior to said fifteenth day of November, 1892, requested said Altheimer Brothers not to commence said suit and stated he would endeavor to have said claims adjusted without action, and did then and there and prior to said fifteenth day of November, 1892, promise and agree to and with the said Altheimer Brothers that if they would forbear commencing their said action for the purpose of effecting an adjustment, without action, of the causes of action sued on herein, and if not effected after November 15, 1892, and it became necessary for them to sue thereon after said date, the defendant would not cause, or suffer to be interposed in such action, if commenced after that date, any plea of the statute of limitations of five years as a bar thereto.

The plaintiff also offered and introduced documentary evidence tending to show that on August 31, 1892, the attorney for Altheimer Brothers at the suggestion and request of defendant, Stephens, communicated with the comptroller of the currency of the United States concerning the adjustment of the claims sued on in this case and on September 15, 1892, the said comptroller referred the matter of the adjustment of said claims to the defendant for action; and that from time to time and prior to the fifteenth of November, 1892, and afterward, defendant verbally promised the said attorney of Altheimer Brothers that he would not take advantage of them by paying out what was in his hands as receiver but that he would withhold a sufficient amount to meet said claims if they were found to be just.

It was also shown that plaintiff purchased said claims of Messrs. Altheimer Brothers, paying them $1,500 therefor, prior to the commencement of this action.

On the part of the respondent, the evidence of himself and his attorney, Hon. Dorsey W. Shackleford, was as follows:

Lon V. Stephens, in his own behalf, testified "that he had no recollection of ever making any promise to the attorney for the said Altheimer Brothers, that he would not plead the statute of limitations, or of ever having heard the statute of limitations spoken of in connection with these claims; that he did not think he made any such promise, and felt sure he had not made such promise, although his mind, during all this time, was occupied by a great many other matters; that he met the attorney for the said Altheimer Brothers and their brother a number of times in St. Louis during the year 1891 and 1892, in connection with these claims; that he thought the claims ought

to be paid, although he would not make payment without the advice of his attorney to do so; and that he had no personal interest in the claims."

The respondent also introduced Hon. Dorsey W. Shackleford, who was the respondent's attorney prior to December, 1892, and who testified "that he called on the attorney for the said Altheimer Brothers in November, 1892, shortly after the general election in that month, with reference to the claims of the said Altheimer Brothers against the defendant, and that the said attorney for the said Altheimer Brothers then and there told him that the time for bringing suit on said claims had about elapsed, but that he had the defendant's promise not to plead the statute of limitations if suit were not brought until after November 15, 1892, and that the said attorney for the said Altheimer Brothers asked him whether or not, in his opinion, he, the said attorney, was acting wisely in accepting said promise without its being in writing, and that thereupon the witness replied that if the defendant made such a promise *the said attorney for the said Altheimer Brothers could rely upon the defendant's 'living up' to it.*"

The court, of its own motion, gave the following instructions:

"1.  The court declares the law to be, that, under the pleadings and evidence in this case, the plaintiff is entitled to recover on the causes of action sued on, provided said causes of action are not barred by the statute of limitation pleaded by the defendant herein.

"2.  The court finds from the evidence that prior to the fifteenth day of November, 1892, the defendant promised and agreed to and with the plaintiff or his agent, that if the plaintiff would forbear to bring this suit until such time after said fifteenth day of November, 1892, as the plaintiff might find it necessary to

bring this suit if negotiations for an adjustment, without action, of the causes of action sued on, should fail, the defendant would not plead the statute of limitation as a bar to such suit; and the court further finds from the evidence that in accordance with said agreement and promise, the plaintiff did so forbear to sue; and the court further finds from the evidence that prior to the fifteenth day of November, 1892, the defendant waived, to and with the plaintiff or his agent, the necessity of putting said agreement and promise in writing, and that said agreement and promise was not made in writing; and the court therefore declares the law to be that by reason of said promise and agreement not having been made in writing, the plaintiff is not entitled to recover in this suit."

To the giving of said second instruction the plaintiff then and there duly excepted at the time.

And the court, also, at the instance of the defendant, gave the following instruction, as applicable to this case, to wit:

"The court declares the law to be, that notwithstanding the fact that the defendant may have entered into an agreement with the plaintiff's assignor or his attorney, to the effect that if plaintiff's assignor would not institute a suit on the cause of action stated in plaintiff's petition against defendant, pending an attempt to settle or adjust said cause of action between them, that defendant would not avail himself of or plead the statute of limitations as a defense thereto if sued thereon, such agreement, if so made, does not deprive the defendant of the benefit of the statute of limitations herein, unless such agreement was made or contained by or in some writing subscribed by the defendant herein."

To the giving of which instruction the appellant then and there duly excepted at the time.

The court rendered judgment for defendant and plaintiff appeals.

I. It will be noted that the learned circuit court found but one obstacle to a judgment for plaintiff and that was that the promise of defendant not to plead the statute of limitations was not in writing. Every other controlling fact was resolved in favor of plaintiff. Indeed, the defendant himself testified that he thought the claims ought to be paid, but he had declined to do so without the advice of his attorney and now interposes the plea of the statute of limitations. To this plea plaintiff replies a forbearance to sue within the five years at the request and upon the agreement of defendant not to plead the statute. The circuit court found that defendant requested plaintiff not to sue and agreed that if he would not defendant would not plead the statute, and that, relying upon that promise, plaintiff did not sue within the time limited by law for the commencement of the suit, but it finds further that because this promise not to plead the statute was not in writing, it would not toll the statute.

The exact question here presented has not been adjudicated by this court. As the statute is supposed to present an insuperable bar to plaintiff's recovery, we think it necessary to recur to its terms. The particular section invoked is in these words: "In actions founded on any contract, no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any case out of the operation of the provisions of this article, or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing subscribed by the party chargeable thereby." Sec. 6793, R. S. 1889.

Did the agreement of the defendant not to plead

the statute of limitations bring it within the purview of this section? If it is "an acknowledgment of the indebtedness" or "a promise to pay," it clearly falls within the statute. If it is neither, the statute has no application to it. Upon this point there is much conflict of authority.

Thus C. J. EARL, in *Shapley v. Abbott*, 42 N. Y. 443, says: "When the holder of a note presents it to the maker and requests payment, upon the ground that it is about to outlaw, and the maker, without in any way denying his liability, says that he will not plead the statute of limitations if it should be permitted to run, I think such a declaration is, under the circumstances, of itself sufficient evidence of an acknowledgment of the debt, within the cases decided before the code, to take the note out of the statute. It was so held in *Burton v. Stevens* (24 Vermont, 131)." To the same effect is *Green v. Seymour*, 59 Vt. 459.

On the other hand, in *Warren v. Walker*, 23 Me. 453, the agreement was in these words: "I hereby waive all defense, which I might otherwise make to the above bill by law, under and by virtue of any statute of limitations." Said the court: "The plaintiff * * * contended [in the court below] that it amounted to a written acknowledgment of the indebtedness of the defendant; or to an express promise by him to pay the debt, thereby taking the case out of the statute of limitations, in conformity to the provision in the statute of 1841, c. 146, sec. 9, and the presiding Judge so ruled. * * * To test its correctness we may inquire whether the memorandum, according to its terms, could have stood in the way of any defense, other than that of the statute of limitations. If it contains an acknowledgment of indebtedness, or a promise to pay the debt, it surely would do so. But the defense, which the defendant agreed to waive, was

only that which he had 'under and by virtue of any statute of limitations.' He did not agree to waive the defense of payment, or of the nonperformance of the services as charged, *or indeed of any other defense, which he might have had to the original cause of action.* * * * Upon this ground, therefore, the memorandum could have no effect to obviate the defense under the statute of limitations.''

The same court in the comparatively recent case of *Trask v. Weeks*, 81 Me. 325, commenting upon *Warren v. Walker* and distinguishing the two cases say: ''Thus it is seen that this case differs materially from that of *Warren v. Walker, supra,* in which the contract contained, *as shown in the opinion, nothing which could be construed into a promise, but was a simple waiver of the statute founded upon a sufficient consideration.* In *Hodgdon v. Chase*, 29 Maine, 47, a much more restricted agreement and one more nearly like that in *Warren v. Walker*, if not of the same effect, was treated as intended for an acknowledgment and new promise. *Otherwise, it could not have been rejected for not being in writing; for, no statute requires a contract not to set* up the statute in defense simply, to be in writing.'' *Cowart v. Perrine*, 21 N. J. Eq. 101.

To say that a promise or agreement to waive the one defense of the statute of limitations estops and deprives the party so agreeing from asserting any and all other defenses he may have to the original cause of action, strikes us as unjust and unreasonable and we are the less inclined to follow such a latitudinous construction of such an agreement, not only because the words of the agreement are ascribed an unnatural and strained signification, a thing forbidden by our laws which require us to give ''words and phrases'' ''their plain or ordinary and usual sense,'' but because in the administration of justice it is likely to be productive of

much injustice in depriving litigants of defenses they never intended to waive, an estoppel much more sweeping in its effects than that asserted by plaintiff in this case.

Take the case of parties mutually indebted. One party solicitous lest the statute shall run and bar his claim appeals to the other for a settlement. For some reason it is not at all convenient for the other to go at once into an adjustment and he agrees that if the settlement is postponed he will not plead the statute, and suppose further he has just offsets which would fully pay his adversary's claim if permitted to be shown; when finally they come to settle upon what principle of justice is he to be told that his waiver of the statute *is a promise to pay his adversary's debt* and he can not show his offsets or counterclaims? I submit it is not a just construction which leads to such results. At most, such an agreement can only amount to a conditional agreement to pay whatever is justly found due after allowing all just defenses and offsets; but such conditional promises were never ruled to deny the party the right of his other defenses. *Waters v. Earl of Thanet,* 2 A. & E. (N. S.) 757; *Lindsay v. Jamison,* 4 McCord (S. C.), 93; *Glenn v. M'Cullough,* Harper's L. R. (S. C.) 484.

It is not such an admission of a present subsisting debt from which a promise to pay would naturally and irresistibly be implied as is required by a long course of well reasoned decisions. *Bell v. Morrison,* 1 Peter's (U. S.) 360; *Carr's Adm'r v. Hurlbut's Adm'x,* 41 Mo. 264; *Mastin v. Branham,* 86 Mo. 643; *Chidsey v. Powell,* 91 Mo. 622; *Sutton v. Burruss,* 9 Leigh (Va.) 381; *Carruth v. Paige,* 22 Vt. 179.

So that, as the case is one of first impression in this court and in the conflicting array of authority we must decide which most comports with the analogies

of the law and sound reason we think that a promise made before the debt is barred not to plead the statute, *accepted and acted upon*, is not within the purview of section 6793, Revised Statutes, 1889, and that the circuit court erred in holding that such an agreement must be in writing to repel the plea of the statute.

II.   Being neither a promise or an acknowledgment of the debt so as to remove the bar of the statute within the terms of section 6793 does it obviate the bar of the statute in any way?   We hold it does upon the principle of estoppel, and here again there is a conflict of authority but we think that the weight of authority and reason alike sustain our view.

The rule is thus well stated in 1 Wood on Limitation [2 Ed.], section 76:  "While a promise not to plead the statute, whether made before or after the debt is barred, does not amount to an acknowledgment thereof or a promise to pay it, *yet if made before the debt is barred, and in consideration of forbearance to sue, and the creditor does forbear to sue upon the faith of the promise*, it is binding upon the debtor, and at least has the effect to keep the debt on foot until the statutory period, dating from such promise, expires   *   *   * *by way of estoppel*."

In *Warren v. Walker*, 23 Me. 453, the supreme court of Maine, while holding that the waiver of the statute of limitations in that case amounted "neither to an acknowledgment, or a promise to pay," yet held it was sufficient to obviate the statute on the ground of estoppel, saying, "now a covenant not to sue an obligor in a bond is tantamount to a release of the obligation; and an agreement in writing never to sue on a parol contract, has a similar effect.   *Foster v. Purdy*, 5 Metc. 442.   By a parity of reasoning the memorandum in this case should preclude the defendant from setting up this defense.   This view of the subject is

very much strengthened by the case of *Webber v. Williams College*, 23 Pick. 302. In that case Webber held a note, purporting to be signed by a person acting as agent for the defendants. When it had stood nearly six years the plaintiff demanded payment. The treasurer of the defendants wrote to the plaintiff, saying *if he would forbear suing then he should have the same rights he then had for one year more; and this the plaintiff complied with*. The court considered this agreement to be a waiver of the defense, afterwards attempted to be set up under the statute, *as it was entered into before the limitation was complete.*"

In *Webber v. Williams College*, 23 Pick. 302, Chief Justice SHAW delivered the opinion and he states the facts of that case even more strongly than the supreme court of Maine in *Warren v. Walker*. He states that when the proposition was made to plaintiff to forbear for a year he replied "*he would not consent* to postpone bringing his action as proposed, *but in point of fact, he did so postpone it till after the six years*," and that court was of the unanimous opinion "that this was a sufficient compliance with the defendants' offer, that they are bound by it, and that it is a good waiver of the statute of limitations."

This case is also in point on the first paragraph of this opinion, in that it was not mooted by court or counsel that the waiver of the statute in the slightest degree affected the other defense of want of power in the agent to bind the college and upon which plaintiff was forced to a nonsuit.

In *Insurance Co. v. Bloodgood*, 4 Wend. 652, the note was dated April 28, 1818, payable six months after date. On the twenty-sixth day of August, 1824, the defendant, the maker of the note, signed this stipulation, "whereas the Utica Insurance Company hold my note, dated April 28, 1818, indorsed by C. C. B., for

$1,900, now therefore I hereby agree not to plead the statute of limitations in a prosecution for any balance that may be due on said note." The defendant pleaded the statute. The court for the correction of errors, held, Judge Jacob SUTHERLAND delivering the opinion, that "the defendant is estopped by his stipulation from availing himself of the statute of limitations."

In *Gaylord v. Van Loan*, 15 Wend. 308, the action was on three notes. The defendant pleaded the statute of limitations. The plaintiff as to the third note replied that the discharge was obtained by fraud. The evidence tended to prove that the attorney told defendant he must sue him unless the notes were renewed. To which defendant replied "he would not avail himself of the statute and a suit need not be brought on that account." Judge NELSON, speaking for the court, said: "Two of the notes were barred when the defendant agreed that he would not avail himself of the statute. As to those notes, it can not be said that the agreement operated as a fraud upon the plaintiff, by inducing a delay in the commencement of the suit * * * but it may well be said as to the *third note, which was not due at the time of the agreement. Although we can not, upon any consistent reasoning, infer a new promise to pay the notes from what was said by the defendant,* taking the whole together, yet, as it respects *the note not then barred,* we do not say that the plaintiff is entirely remediless. The agreement not to plead the statute, as respects this note, operated as a fraud upon the plaintiff. Had it not been made, he could have prevented the effect of the statute by commencing his suit. By pleading the statute, the defendant is guilty of bad faith, and, upon general principles, *should be estopped* from availing himself of that defense. No one ought to be permitted to disregard his own deliberate, lawful agreement, to the injury of another. The principle

which should debar the defendant from setting up the defense in this case is a familiar one; the only difficulty is in the mode of its application. In the case of the *Utica Ins. Co. v. Bloodgood*, 4 Wendell, 652, the stipulation not to plead the statute was in writing, *but its being in writing does not add anything to its legal effect, unless it be under seal.* It is of no greater efficacy or higher credit in court than an agreement resting in parol, when proved."

In *Armstrong v. Levan*, 109 Pa. St. 177, it appeared that Armstrong, the prothonotary, negligently failed to index a judgment in favor of Mrs. Levan whereby a junior judgment creditor secured a preference and she lost her lien. Before the running of the statute her attorney called upon the clerk and said to him that unless he adjusted it he would sue, whereupon the clerk agreed that if Mrs. Levan would not sue him and suffered loss by his mistake he would make it good. When sued he pleaded the statute. Said the court: "The conversation referred to occurred before the statute had run, and it was a distinct promise to pay in consideration that the plaintiff below would not sue. If, therefore, she relied upon this promise; if she was thereby lulled into security, and thus allowed the six years to go by before she commenced her suit, with what grace can the defendant now set up the statute? The promise operated not to revive a dead tort, *but as by way of estoppel.* It has all the elements of an estoppel. The plaintiff relied and acted upon it; she has been misled to her injury; but for the defendant's promise she would have commenced her action before the six years had expired." To the same effect in all respects is the decision of the supreme court of North Carolina, in *Barcroft v. Roberts*, 91 N. C. 363. See, also, *Joyner v. Massey*, 97 N. C. 148; *Haymore v. Commissioners*, 85

N. C. 268; *Hill v. Hilliard*, 103 N. C. 34; *Quick v. Corlies*, 39 N. J. L. 11.

In *Cowart v. Perrine*, 21 N. J. Eq. 101, in discussing what constitutes an estoppel, Chancellor ZABRISKIE said: "As long as this agreement really caused the complainant to delay a suit, it would come within the reasons on which an estoppel *in pais* is founded. When the act or promise of one man causes another to do, or *forbear to do, something* which he would otherwise have done, the other is estopped from taking advantage of the act or omission, caused by his own act or promise." And this is the doctrine of the federal courts. *Randon v. Toby*, 11 How. (U. S.) 493; *Mann v. Cooper*, 2 App., D. C. 226, opinion by C. J. ALVEY.

Opposed to all these authorities is the opinion of C. J. EARL in *Shapley v. Abbott*, 42 N. Y. 443, and *Hodgdon v. Chase*, 29 Me. 47. The grounds upon which Judge EARL reached his judgment were: *first,* that a promise not to plead or to waive the statute was "an acknowledgment or promise to pay," and therefore fell within the statute, an assumption and a prem-. ise which we think we have shown is contrary both to the natural and ordinary meaning of the words of the statute and opposed to the decisions of many of the highest courts of the land; *second,* that a promise not to plead the statute made before the debt was barred, and accepted and acted upon by the creditor, did not create *an estoppel in pais, because both parties were equally well informed of all the facts,* a position refuted by all the decisions just cited, and by none more clearly than by this court, beginning with *Taylor v. Zepp*, 14 Mo. 482, and adhered to throughout the judicial history of the state; *third,* because he says there is no valuable consideration to support such a promise.

"A valuable consideration is a benefit to the party promising, or to a third person at his request, or an

inconvenience, loss, or injury, or the risk of it to the party promised." 4 Minor's Institutes, part 1, page 16.   From time immemorial an agreement to forbear to sue has been held to be a valuable and sufficient consideration, and so it was held in *Glasscock v. Glasscock*, 66 Mo. 627, upon a review of all the common law authorities.   Bishop on Contracts [Enlarged Ed.], secs. 57–63; Chitty on Contracts [11 Am. Ed.], 35. By such forbearance the creditor is delayed and the debtor is or may be benefited; so that there concur both the ordinary grounds upon which a valuable consideration may be rested.   Nor is it an objection that no specific time of forbearance was agreed upon, for in such a case the law will imply a reasonable time. *Glasscock v. Glasscock*, 66 Mo. 627.

With due respect for the distinguished jurist who delivered the opinion in *Shapley v. Abbott*, we can not concur in his premise that there was no consideration for the promise.   On the contrary, we hold that a forbearance to sue is one of the commonest examples of valuable consideration to be found in the common law reports.

The decision in *Hodgdon v. Chase*, 29 Me. 47, is a dogmatic statement of the court's conclusion without responding to the able and, to our minds, conclusive argument of counsel to the contrary, and is at variance with *Trask v. Weeks*, 81 Me. 325.

III.   But it is urged in argument that an agreement to waive the statute of limitations is against public policy, and void.   That a stipulation in a note or other contract, entered into contemporaneously with the incurring of the debt or obligation, that the promisor or obligor would waive all benefits of the statute of limitation, is contrary to public policy for the reason that it deprives a party of the benefit of a salutary and beneficent statute without any corresponding consid-

eration therefor, is a proposition that commends itself very strongly to one's sense of justice, but it is not involved in this case. On the other hand, that parties may decline to plead the statutes of limitations, usury, and of frauds, and thus waive the privileges secured to them by these statutes, is the settled law of this and all other states. The question here is different from either of the foregoing and is this: Is it against a sound public policy to estop one who has agreed with his creditor to waive the statute of limitations, after his agreement has been acted upon, from availing himself of such a plea?

It is agreed on all hands that the statute itself furnishes a sure method of evading it by simply having the debtor acknowledge or promise to pay the debt in writing, and the courts which deny that this is an estoppel *in pais* go to the extent of saying that if the promise to waive the statute only be in writing, then no principle of public policy is violated and the statute is obviated. It can not be, then, that it is against public policy to keep alive *stale demands*, *provided* it is done in writing.

But it seems to us that the distinction between defenses to executory contracts and executed agreements obtains here as in other well known instances. The statute of frauds was designed to prevent frauds and perjuries by requiring certain contracts to be in writing, and yet the courts have steadily refused to permit a party to make it the means of perpetrating a fraud upon his adversary. While an action can not be maintained upon an executory contract required by statute to be in writing, it often happens that where one party has completely performed his part of the contract, that the court will not listen to the other party to say it is not in writing. A verbal contract for the sale of lands would not be enforced if neither party

had changed his *statu quo* upon the faith of the sale, but if the vendee has paid the purchase money and taken possession of the lands and made valuable improvements thereon, the courts will compel the vendor to carry out his contract, upon the principle that equity will not allow a statute designed to prevent frauds to be made an instrument for committing them. Accordingly, the courts of last resort in many of our states have held that a promise by a debtor before the debt was barred to waive the statute in consideration of the creditor's forbearance to sue being for a new and valuable consideration was not contrary to public policy, and if the time was extended and the creditor did forbear, the debtor was estopped to plead the statute. *Quick v. Corlies*, 39 N. J. L. 11; *Jordan v. Jordan*, 85 Tenn. 561; *Lowry v. Dubose*, 2 Bailey (S. C.), 425; *Mann v. Cooper*, 2 App., D. C. 226; *Lade v. Trill*, 6 Jurist (O. S.), pt. 1, 272.

Our conclusion upon this branch of the case is that the promise to waive the statute is not within the provisions of section 6793; that it is founded upon a valuable consideration and there is no statute requiring it to be in writing, and it is not contrary to any sound principle of public policy and the court erred in its instruction requiring it to be in writing.

IV. But it is urged that although the court did find and believe that plaintiff's claim was a valid, meritorious debt against said bank, and that it was duly presented for allowance as required by law and defendant's notice, and was wrongfully rejected, and although it did find that before said claim was barred plaintiff's assignors notified defendant they would sue thereon to prevent the running of the statute, and that thereupon defendant agreed if they would forbear to sue he would not plead the statute if a suit finally became necessary,

still the judgment against plaintiff was right because defendant as receiver had no authority to make such an agreement with plaintiff.

The defendant did not testify he was without authority to make such an agreement, but his evidence was directed to the making of the agreement. He offered an instruction at the close of the case to the effect that he was not bound notwithstanding the court should find he did make the agreement and the court refused it.    We think he is precluded by the finding of the court in connection with the refusal of this instruction, for the reason that the record recites that "plaintiff offered and *introduced documentary evidence* tending to show that on August 31, 1892, the attorney for the said Altheimer Brothers, at the suggestion and request of the respondent, communicated with the comptroller of the currency of the United States concerning the adjustment of the claims sued on herein; *that on September 5, 1892, the said comptroller of the currency referred the matter of the adjustment of said claims to the defendant for action.*"    So that, granting, for the sake of argument, that these conventions in regard to the ordinary litigation of a receivership must be under the direction of the comptroller, it seems to us we are bound by the recitals of this record to presume in favor of the judgment of the trial court that the documentary evidence was sufficient to justify the refusal of the instruction that the agreement of defendant was not binding because not directed or ratified by the comptroller, and we prefer to rest this point on the record itself.

Counsel for defendant cite as authority for their contention, *Kennedy v. Gibson*, 8 Wall. 498 and *Bank v. Kennedy*, 17 Wall. 19 and *Ellis v. Little*, 27 Kan. 707.

*Kennedy v. Gibson* simply holds that as a stock-

holder's liability for the debts of a national bank are
only contingent or secondary the receiver had no right
to sue a stockholder on such a liability until directed by
the comptroller.   In *Bank v. Kennedy*, Justice BRAD-
LEY points out that *Kennedy v. Gibson* was a very
special case and could not fairly be quoted for the gov-
ernment of an. ordinary suit by the receiver, saying:
"With regard to ordinary assets and debts no special
direction is needed; no unusual exercise of judgment
is required," and that "the language of the statute
authorizing the appointment of a receiver to act *under
the direction of the comptroller*, means no more than
that the receiver shall be *subject* to the direction of the
comptroller." The Kansas case simply holds "that an
order to sell certain property of the insolvent estate did
not authorize an exchange of it for other property."
*Kennedy v. Gibson* and *Ellis v. Little* do not reach the
point at issue here and *Bank v. Kennedy* asserts the
proposition that in "ordinary litigation" *no special
authority is needed.*

In *Case v. Terrell*, 11 Wall. 199, Judge MILLER,
speaking for the court, said:    "He [the receiver] rep-
resents the bank, its stockholders, its creditors, and
does not in any sense represent the government."

There is nothing about the facts of this case to take
it out of the class denominated by Judge BRADLEY as
"ordinary suits." It is simply a suit against the
receiver for money received and held by the bank in
trust for plaintiff, and his assignors, and as receiver he
was subject to suit in the state courts.   *Bird's Ex'rs v.
Cockrem*, 2 Woods (U. S. Cir. Ct.), 32.

Having no special privileges when sued, over other
litigants, no good reason appears to us why he should
not have the ordinary rights of a litigant to stipulate as
to the conduct of litigation about his trust.   When he
made this agreement to waive the statute it had not run

and it is to be presumed that he was honestly endeavoring to save the estate the costs of litigation. He was not waiving any defense that had then accrued by reason of the statute.

An administrator in Missouri is a trustee with much more restricted powers as to the allowance of claims against the estate in his hands, and yet when in *North v. Walker's Adm'r*, 66 Mo. 453, the statute was pleaded, and it was replied that the executor had contracted for an extension of time and his power to do so was challenged, this court unanimously said: "The agreements were not entered into for the purpose of reviving an extinct claim, or creating a liability where none existed before, for at the time they were entered into the demand of plaintiffs was perfectly valid, and the liability of the estate to its payment undisputed. The demand could then have been enforced, and would have been according to the evidence, but for these agreements, the effect of them being, not to create a new obligation, but simply to extend the time within which a debt, then in full vitality, might be discharged. That an executor or administrator can not revive a demand against an estate which has once been barred under the administration law, is unquestioned. The question in this case involves no such principle, but simply whether the executor could rightfully make an agreement, whereby the time for payment of an existing demand was extended."

If an executor with limited statutory powers could make an absolute agreement to pay and waive the time in that case *a fortiori* it would seem a receiver can stipulate as to mere remedies and defenses he will make if thereby he secures a forbearance to sue and averts costs of litigation.

We think the presumption must be indulged that by the documentary evidence the court was satisfied

that he had power to make the stipulation and in the absence of any direction to the contrary by the comptroller it can not be presumed that the promise of defendant not to plead the statute was beyond his powers as receiver.

As to the discussion that there was an objection to proving the agreement by parol, it is sufficient to say there is no such objection in the record.

As the trial court erred in holding that the promise of defendant not to plead the statute was not binding because not in writing and erred in this particular alone, the judgment is reversed and the cause remanded for a new trial. BRACE, C. J., and MACFARLANE, J., concur; BARCLAY, J., concurs in reversing and remanding the cause for reasons assigned in his separate opinion. BURGESS, SHERWOOD, and ROBINSON, JJ., dissent.

## SEPARATE OPINION.

BARCLAY, J.—The only defense interposed in this action is the statute of limitation of five years. In my opinion that statute does not govern the case. The plaintiff is entitled to the benefit of a longer period of limitation because of the nature of the transaction out of which the action grows.

If the agreement by the bank, in accepting the deposits for which the suit is brought, should be rightly classified as a written agreement "for the payment of money or property," then the term of limitation would be ten years, and the present action would be unquestionably maintainable.

The petition presents two counts, each for a different sum deposited in the bank on account of new stock subscribed by the depositor, but which stock, in point of fact, was never issued, the proper preliminary steps not having all been taken before the bank failed. The petition sets out the contracts of subscription, failure

to comply; and asks judgment for the amounts deposited on that account.

At the trial it appeared that, on accepting one of said sums, the bank by its cashier issued to the depositor a receipt in the following form.

"ST. LOUIS, July 1, 1887.

"Received of Julius Thoss five hundred dollars, being payment in full of subscription of five shares of the increased capital stock of the Fifth National Bank of St. Louis, under resolution of the shareholders of December 11th, 1886.

"C. C. CRECELIUS, Cashier."

That receipt was given for the principal sum ($500) sued for in the second count of the petition.

For the larger amount claimed in the first count (consisting of deposits by Altheimer Bros. of installments of stock subscription) receipts were issued by the Bank (for the several items deposited) "otherwise in the same form as the receipt given by the Bank to Julius Thoss," as the bill of exceptions recites.

These receipts contain a clear and plain implication (at least) of a promise to apply the amount of the deposits in payment for the shares of proposed new stock, and in effect embody a promise to deliver the said shares.

That promise imposed a trust upon the Bank to make such application of those funds, and an obligation to deliver the stock.

The foundation of the action is the trust created by these deposits and the breach of the agreement on which the Bank accepted them, as shown by the receipts.

It is true the petition does not allege that the agreements of the Bank in regard to these funds were

in writing, but it does not show that they were not in writing. It recites and counts upon the agreements of deposit, and states the substance of the contract of subscription and its breach; and the proof shows that those agreements were of the kind above described.

The whole of plaintiff's case, as to these agreements and receipts and as to his cause of action generally, was not disputed at any point.

The only controversy at the trial was as to the avoidance of the plea of supposed limitation of five years. Yet though the plaintiff pleaded certain facts in the reply in avoidance of that plea, he also denied the plea, and excepted to the ruling of the circuit judge who held the plea of limitation good.

As the case stands, the bar of limitation of 5 years is not applicable if the written receipts for those deposits should be correctly interpreted to be written agreements for property (namely the stock), or for the payment of the money by the bank to the stock account.

Sections 6774 and 6775 (R. S. 1889) of the statute of limitations, when read together, indicate that where a writing contains an implied (no less than when it contains an express) promise for money or property, an action to enforce the obligation of that promise may be brought within ten years.

In *Reyburn v. Casey* (1859) 29 Mo. 129, a receipt in the following form was under review, viz:

"Received of H. Doane for Samuel A. Reyburn, one hundred and eighty dollars. Potosi, November 16, 1850. [Signed]  J. H. Casey."

Referring to this receipt and holding it governed by the ten years' limitation, the court said: "It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed."

That decision was followed in a second appeal in the same case (*Reyburn v. Casey* (1860) 31 Mo. 252), in *Moorman v. Sharp* (1864) 35 Mo. 283, and in *Shelton v. Wyman* (1876) 1 Mo. App. 130.

In *Menefee v. Arnold* (1873) 51 Mo. 536, it was declared that the implied promise must arise from the writing itself, and where it does not, but appears only from outside evidence, the ten years' limitation is not applicable. But the court cited the earlier decisions mentioned, repeating and approving the principle they announced.

The result of these decisions is that if the writing in question contains enough to raise the promise (to pay money or property) sued on, the ten years' limitation applies to an action for its breach. If the obligation is clearly apparent from the writing, the breach of it may be exhibited by facts outside the writing.

Since *Reyburn v. Casey*, the statute has been re-enacted several times in the same terms then construed; and, as that construction was then publicly and widely known, through the official reports of the court, it should be taken to have become embodied in the re-enactment of the same language.

Looking at the receipt in the case in hand (the terms of which have been quoted) what is its fair import? It is a receipt for the money, and, at the very least, it certainly implies an undertaking to deliver (or pay) the amount of stock paid for.

To that extent it appears to me to contain a promise in writing to pay money or property, within the rulings in the decisions above noted. (See also *Smith v. Giegrich* (1865) 36 Mo. 369.)

This view is supported by comments found in other Missouri cases on the language of new promises to avoid the bar of limitation. *Carr's Adm'r v. Hurlbut's Adm'x* (1867) 41 Mo. 264; *Chambers v. Rubey*

(1870) 47 Mo. 99.    And it is fortified by holdings in other jurisdictions as to what agreements are properly entitled to be regarded as "written," within the meaning of statutes of limitations.    *Ashley v. Vischer* (1864) 24 Calif. 322; *Jassoy v. Horn* (1872) 64 Ill. 379; *Long v. Straus* (1886) 107 Ind. 94 (6 N. E. Rep. 123); *Wilkinson v. Johnson* (1892) 83 Tex. 392 (18 S. W. Rep. 746); *DeVey v. Dunlap* (1893) 7 Ind. App. 690 (35 N. E. Rep. 195).

A document may at the same time contain a mere receipt and also an agreement, express or implied from what it expressly stated.    In its character of receipt it may be explained; but in its character of contract it is protected from assault by oral explanation to the same extent that it would be if unconnected with the acknowledgment of the receipt of something.

The papers in view in this case, besides admitting the receipt of the sums of money mentioned, contain an express or implied agreement by the Bank to apply those sums to the stock subscription and to deliver the stock so paid for.    As such, the papers contain a written promise to pay money or property, enjoying the benefit of the ten years' limitation in event of a breach of that promise.

Plaintiff has at all times excepted to the circuit ruling which denied him a recovery on the ground of the supposed bar of the five years' limitation.    His exception seems to me good.    The learned trial judge should not have given the instruction that subjected the plaintiff to a limitation short of ten years on the showing plaintiff made as to the nature of the agreement which lies at the foundation of the case.

For these reasons, the judgment should be reversed and the cause remanded.

BURGESS, J. (*dissenting*).—Finding myself unable to concur in the majority opinion of the court, I deem it not improper to give my reasons for my nonconcurrence.

The suit is against the defendant in his official capacity as receiver of the Fifth National Bank of St. Louis, he having been duly appointed to that position by the comptroller of the currency of the United States, under the national banking act, 13 Statutes at Large, p. 99.    While it is said in *Case v. Terrell*, 11 Wall. 199, "he represents the bank, its stockholders, its creditors, and does not in any sense represent the government," he is, nevertheless, an officer of the government, appointed by it, and amenable to it.    His duties are not defined by contract, but by act of congress.    Thus in *Platt v. Beach*, 2 Ben. 303, it is held that a receiver of a national bank, appointed under the thirty-first section of that act, is an officer of the United States. It was so held in *Stanton v. Wilkeson*, 8 Ben. 357; *Frelinghuysen v. Baldwin*, 12 Fed. Rep. 395; *Kennedy v. Gibson*, 8 Wall. 498; *Bank v. Kennedy*, 17 Wall. 19; *United States v. Hartwell*, 6 Wall. 385; *Price v. Abbott*, 17 Fed. Rep. 506; *Armstrong v. Ettlesohn*, 36 Fed. Rep. 209; and *Ellis v. Little*, 27 Kan. 707.

"He is not the agent or representative of the parties, but is an impartial officer of the court holding his position and exercising his functions for the common good of all."    1 Elliott's General Practice, sec. 194.

The fiftieth section of the national bank act of June 3, 1864 (13 Stat. at Large, 114, 115) enacts:

"That on becoming satisfied, as specified in this act, that any association has refused to pay its circulating notes    *    *    *    and is in default, the comptroller of the currency may forthwith appoint a receiver,    *    *    *    who, under the direction of the comptroller, shall take possession of the books,

records, and assets of every description of such association, collect all debts, dues, and claims belonging to such association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders provided for by the twelfth section of this act; and such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller of the currency, and also make report to the comptroller of the currency of all his acts and proceedings."

The same section proceeds:

"The comptroller shall thereupon cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same, and to make legal proof thereof. And from time to time the comptroller, after full provision shall have been first made for refunding to the United States any such deficiency in redeeming the notes of such association as is mentioned in this act, shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction; and from time to time, as the proceeds of the assets of such association shall be paid over to him, he shall make further dividends, as aforesaid, on all claims previously proved or adjudicated; and the remainder of such proceeds, if any, shall be paid over to the shareholders of such association, or their legal representa-

tives, in proportion to the stock by them respectively held.''

In speaking of the powers of receivers under this act in *Ellis v. Little*, 27 Kan. *supra*, it is said: ''The receiver of a national bank, appointed by the comptroller under the section of the act of congress quoted, is the agent of the United States, and is limited as to his functions by the object of the receivership and the duties which it involves. (High on Receivers, sec. 360; *Kennedy v. Gibson*, 8 Wall. 498.)'' Again, in the same case, it is said: ''As the power of a receiver of a national bank appointed by the comptroller is limited, a person dealing with him in his official capacity is bound as a matter of law to have knowledge of his authority to act and if contracts and agreements are entered into with the receiver in excess of his authority as conferred by law, the parties contract at their own peril, and the estate of the bank can not be charged for the default or inability of a receiver acting outside of his functions as receiver and beyond the duties which it involves.'' See, also, *Tripp v. Boardman*, 49 Iowa, 410.

Defendant has no interest in the estate other than that which he holds in a fiduciary capacity; his authority and his duty are defined by the act, which prescribes ''the beginning, scope, and end of his duty and functions.'' *Van Antwerp v. Hulburd*, 8 Blatchf. 282; High on Receivers [3 Ed.], sec. 360. ''But the receiver can not render himself liable, or charge the estate in his hands, by any executory contract, unless authorized so to do by the provisions of the national banking act and by the order of a court of competent jurisdiction obtained under the terms of that act. * * * And his powers being limited, one who deals with him in his official capacity is chargeable

with knowledge of his authority and contracts at his own peril." High on Receivers, sec. 360.

As no power is conferred on a receiver by the act to make contracts with, or promises to, one or more creditors of the estate in his hands, and as no such authority exists incidental to his general authority, in the absence of such power being conferred by a court of competent jurisdiction, no such contracts made by him as such receiver can be upheld, and there is no allegation in the pleadings that authority to do so was ever conferred in this way. The question is not as to whether he might not waive the statute, or any other defense that might exist to the cause of action, but is as to his power and authority to contract not to do so. If he can contract not to plead the statute he can for the same reason contract not to plead any other defense that he may have, which would open the door wide to fraud and corruption.

Nor is the question as to the power of a creditor to extend the time of payment, or to forbear to sue for a consideration paid, and in that way extend the time of payment beyond the time when due according to the terms of the contract, involved in this case. No one questions that proposition, but the question is as to the authority of Stephens as receiver to contract not to plead the statute, and I am confident that no authority can be found which asserts that he had the power to do so.

A promise, then, by Stephens as receiver, not to plead the statute of limitations having been made without any authority whatever, is not binding on him as receiver, nor on the estate in his hands as such. No one would contend that, if, after a receiver had made such a promise, his receivership should become vacant in some way, and his successor appointed, such a

promise would be of any legal effect, or binding upon his successor. Then if not binding on his successor it must needs be because not binding on the officer making the contract or promise in the first place. There can be no other reason.

If it be true that a receiver may by agreement or promise not to plead the statute of limitations if suit is not brought against him as such on a claim or demand about to become barred by the statute of limitations and thus prevent it from becoming barred, for instance in the case in hand, for the term of five years, or for an indefinite length of time, from the time the promise or agreement is made, why may he not do so from time to time until "the leaves of the judgment Book unfold?"

To announce such a rule is but to hold that a receiver of any corporation may by promise not to plead the statute of limitations, on a claim for damages, or on contract against the same which is about to become barred by the statute, continue it in force for the statutory period in which such action is required to be brought from the time the promise is made and so on without end, and thus prevent the statute from ever becoming a bar, which is inconsistent with the letter, policy, and spirit of all law in regard to the powers and duties of receivers.

It appears from the face of the petition, that defendant is sued as an officer, and not as a private citizen, which, for reasons already stated, states no cause of action, and the objection may be raised for the first time in this court. *Smith v. Burrus*, 106 Mo. 94; *Sweet v. Maupin*, 65 Mo. 65; *McIntire v. McIntire*, 80 Mo. 470; *Walker v. Bradbury*, 57 Mo. 66; R. S. sec. 2047. If the petition states no cause of action, a good cause of action could not be injected into it by any

evidence that defendant may have given as a witness, or any statements that he may have made as such.

The question is not with respect to the rights of defendant to stipulate as to the conduct of litigation about his trust, but is in respect to his power to stipulate against the statute of limitations becoming a bar to the claim sued on at the expiration of five years from the time the cause of action accrued thereon.

In support of his right to do so the case of *North v. Walker's Adm'r*, 66 Mo. 453, is relied upon. That case is predicated upon *Smarr v. McMaster*, 35 Mo. 349.

In the *Smarr* case the syllabus is as follows: "The administrator of an estate who was security for the payment of a debt, has authority to consent to the creditors granting to the principal debtor an extension of the time of payment, if it be for the interest of the estate;" and in the opinion it is said:

"He [the administrator] is not the unqualified owner of the property of the estate   *   *   *   and has not plenary power over it; but he is the owner for every purpose necessary to enable him to discharge the duties of his office, and is the collector, preserver, and disposer of it for the benefit of the creditors, legatees, and distributees of the estate; and therefore, while he may not add to the liabilities of the estate, he may lawfully do many acts for the preservation of the estate which are not specifically named in the statutes, and the diminution of the debts of the estate is an act in preservation of the estate as clearly as many other acts to that end.   *   *   *   We are however of opinion, that under the general authority of the administrator to preserve the estate, this power may be exercised by him."

While this language would seem to indicate that the power to grant the extension was conceded because beneficial to the estate, it was said in the *North* case,

that it was decided "as a mere naked, legal proposition, without reference to the consideration as to whether such agreement was advantageous or otherwise, to the estate." I submit that this is a misconception of the ruling in the *Smarr* case. It will be observed, however, that there was no question involved in that case as to the power of the administrator to contract for the extension of time beyond the statutory period, by which the cause of action on the note in question would have been barred, and is not an authority against our contention.

In *Wernse v. McPike*, 100 Mo. 476, SHERWOOD, J., in regard to the case of *North v. Walker's Adm'r, supra,* said: "Letters of administration were granted December 10, 1868; but the note sued on did not mature till March 17, 1870, and suit was brought on the note in May, 1872, in the St. Louis circuit court; but the note was presented in due time to the probate court, the executor being present and waiving all objections, the judge declining to make a formal allowance because the note was not yet due, and two extensions of time were granted on the note in February, 1870, at the request of the executor, covering a space of two years from the seventeenth of March, 1870, and a written agreement to that effect was filed by the creditor and by the executor and filed in the probate court together with a copy of the deed of trust which secured that note, various payments of interest on the notes being made from time to time, by the administrator, and filed by him, with the approval of the court, as vouchers, and finally the trust property sold for about three fourths of the debt, and that credited on the note, and upon these facts it was held that neither the two years' nor the three years' statute had run against the claim."

In that case the agreements were in writing and made with the approval of the probate court, to prevent

a sacrifice of the property conveyed by deed of trust to secure the payment of the note in question. The estate in defendant's hand could not possibly have been benefited by the alleged promise by him not to plead the statute of limitations; beside, his duties as receiver are much more restricted than those of an administrator. While an administrator has some discretionary powers with respect to the management of the estate in his hands, a receiver has none. The former represents the estate in his hands, while the receiver in this case represents the bank, its stockholders and its creditors.

The next question is, did the promise of defendant, if made, not to plead the statute of limitations, bring it within the meaning of section 6793, Revised Statutes, 1889. That section reads as follows:

"In actions founded on any contract, no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any case out of the operation of the provisions of this article, or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing subscribed by the party chargeable thereby."

If the promise not to plead the statute is an acknowledgment of indebtedness, or a promise to pay, or a new or continuing contract, then it comes clearly within the meaning of the statute, and is void because not in writing. As to whether such a promise is a new one or not the authorities are in conflict.

In Greenhood on Public Policy, page 506, note 3, it is said such agreements merely amount to new promises. *Crane v. French*, 38 Miss. 505.

In *Shapley v. Abbott*, 42 N. Y. 443, EARL, J., in speaking for the court, said: "When the holder of a note presents it to the maker and requests payment,

VOL. 132 mo—36

upon the ground that it is about to outlaw, and the maker, without in any way denying his liability, says that he will not plead the statute of limitations if it should be permitted to run, I think such a declaration is, under the circumstances, of itself sufficient evidence of an acknowledgment of the debt, within the cases decided before the Code, to take the note out of the statute. It was so held in *Burton v. Stevens* (24 Vermont, 131). The acknowledgment, then, proved in this case, would have been sufficient to take this note out of the statute of limitations, if it had not been for section 110 of the Code, which provides that 'no acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby.' The only effect of this section is to require that to be proved by writing which could before be proved by parol (*Hayden v. Williams*, 7 Bing. R. 163). Hence, if the plaintiff relied upon what the defendant said in September, 1858, as an acknowledgment to take the note out of the statute, he would fail simply because it was not in writing. If he relied upon what the defendant then said as an agreement not to plead the statute, he would fail, if for no other reason, because there was no consideration for the agreement. He did not agree with the defendant that he would wait and permit the note to outlaw. Neither could he rely upon what then took place as a waiver by the defendant of the statute of limitations, because there was no consideration to uphold the waiver."

That case was approved in *De Freest v. Warner*, 30 Hun, 94.

It will be observed that the statute under which the ruling in that case was made is in almost the same language that the Missouri statute is.

So in *Randon v. Toby*, 11 How. 493, it is held that a stipulation in writing not to plead the statute of limitations founded on a valuable consideration, forms a *new promise to pay the money*.    That case was followed and approved in *Mann v. Cooper*, 2 App., D. C. 226.

*Ins. Co. v. Bloodgood*, 4 Wend. 652; *Gaylord v. Van Loan*, 15 Wend. 308; *Warren v. Walker*, 23 Me. 453; *Webber v. Williams College*, 23 Pick. 302; *Waters v. Earl of Thanet*, 2 G. & D. 166; *East India Co. v. Paul*, 7 Moore P. C. C. 85; *Lade v. Trill*, 6 Jur. (O. S.), pt. 1, 272, were all cases where the agreement had the effect of a new promise to pay the debt and actions were brought on the contracts, before the expiration of the time embraced by the new promise.    There was no question raised in any of these cases as to whether the promise should have been in writing or not.

So in *Gardner v. M'Mahon*, 3 A. & E. (N. S.) 561, PATTESON, J., in speaking of a promise not to plead the statute, said:    "The defendant admits something to be due, though he does not agree with plaintiff as to the amount: but he says, 'I will not avail myself of the statute, and will put it out of my power to do so.'    That, if taken alone, makes a promise.    The expressions which follow do not qualify that promise."

As the promise not to plead the statute was not a part of the original contract sued on, it can not be regarded otherwise than as a new promise to pay, which is void because not executed in compliance with the statute.

Conceding (but not admitting) that the promise by Stephens not to plead the statute was not a promise to pay the debt, it was void being against public policy. It has been held that such a contract is an agreement never to set up any such defense.    *Quick v. Corlies*, 39 N. J. L. 11; *Warren v. Walker*, 23 Me. 453.

In *Crane v. French*, 38 Miss. 505, it was held that a contract or promise by a debtor that he will never plead the statute of limitations in bar of his debt, is in violation of the policy of the law and void, in that it is not in consonance with "that policy which requires suits to be brought in due season, and discourages stale demands, as calculated to promote litigation and to prejudice the just rights of the parties."

So in *Moxley v. Ragan*, 10 Bush. 156, it is said: "The right to plead the statute of limitations is a personal privilege; but will it be insisted that an agreement or promise never to plead the statute is binding. If so, the grocer and merchant, and all others engaged in the business affairs of life, would have only to agree with those who promise to pay, verbally or in writing, that the statute of limitations should never be relied on, * * * in order to render nugatory these wholesome laws, enacted for the peace and welfare of society, and in accord with an enlightened public policy."

Again, in the same case, in speaking of a contract in advance to waive the benefit of all exemption laws, as against a debt contracted, the court quotes approvingly from *Harper v. Leal*, 10 How. Pr. 283, the following: "A contract fraught with such consequences to the family of the debtor is totally at variance with public policy, and therefore void." Followed and approved in *Wright v. Gardner*, 33 S. W. Rep. (Ky.) 622. To the same effect is *Kneettle v. Newcomb*, 31 Barb. 169.

The effect of the promise not to plead the statute, if of any validity at all, was to continue in force the obligation of the contract, regardless of the statute of limitations. It was made while the original was a subsisting liability, and comes clearly within that provision of the statute which provides that no promise shall be evidence of a continuing contract unless such prom-

·ise be in writing and subscribed by the party chargeable thereby. *McCormick v. Brown*, 36 Cal. 180. It follows that the contract not to plead the statute being a continuation of the original contract, was void because not executed in compliance with the statute.

Whatever may be the law of estoppel as applicable to a contract or promise not to plead the statute of limitations made by a person in his own right, and in consideration of such promise suit is not brought until such demand is barred by the statute, upon which there is much conflict in the authorities, it has no application to a case like the one in hand where the promise was made by defendant as receiver, he having no power or authority to make such contract, which the party to whom the promise was made was bound to know.

From these considerations it follows that the judgment should be affirmed. SHERWOOD and ROBINSON, JJ., concur.